(98 App. Div. 521)

## CITY OF ROCHESTER v. ROCHESTER RY. CO.

(Supreme Court, Appellate Division, Fourth Department.　November 15, 1904.)

1. STREET RAILROADS — OPERATION — STATUTES — APPLICATION TO EXISTING RAILROAD.

Laws 1884, p. 313, c. 252, provides in section 9 that every street railroad corporation extending or operating a railroad under the provisions of the statute shall, whenever required by the local authorities, keep in repair the portion of every street between the rails, within an incorporated city, and another section, relative to fares, provides that such section shall not apply to any part of any road previously constructed, unless the corporation shall acquire the right to extend the road under the statute, in which event its rate of fare shall not exceed its authorized rates prior to the extension. *Held*, that section 9 applies to the tracks of companies incorporated under its provisions, and to the tracks of an extension of the lines or branches of the railroad of an existing street railroad company, but does not apply to the road of an existing street railroad company.

2. SAME—REPAIR OF STREETS—LIABILITY OF STREET RAILROAD—CONTRACT WITH CITY—CONSTRUCTION.

Laws 1869, p. 54, c. 34, required the Rochester Street Railroad Company to keep in repair the streets inside the rails of its tracks, but provided that, whenever any of such streets should be permanently improved, the company should not be required to bear any part of the expense. Railroad Law, art. 4, § 98 (Laws 1890, p. 1112, c. 565, as amended Laws 1892, p. 1404, c. 676, § 98), provides that every street railroad shall keep in repair the street between its tracks, under the supervision of the local authorities, and that on neglect to pave or repair, after notice, the authorities may do so at the expense of the corporation. After the enactment of section 98, under an ordinance of the Rochester city council, the city ratified the location of all lines of the railroad company, and it was provided that the provisions of article 4 of the railroad law should be complied with, but that all agreements between the city and the railroad company should remain in full force, and the railroad company was required to give free passage to firemen and policemen, which it had not previously been required to do. *Held*, that the street railroad company did not by such contract assent to a right of the city to exact payment from the railroad for paving between its rails, since the provision as to the railroad law was modified by the provision that all agreements should continue in force, and the provisions for furnishing transportation had no consideration, except the approval of the location of the railroad and its tracks as the same were then used and operated.

3. SAME—PAVING BETWEEN TRACKS—LIABILITY OF COMPANY—CONSTITUTIONAL LAW—OBLIGATION OF CONTRACT.

Laws 1869, p. 54, c. 34, relating to the Rochester Street Railroad Company, provided that the company should maintain the surface of the streets inside of its rails in good repair, but that, whenever any of the streets should be permanently improved, the company should not be required to bear any part of the expense. Thereafter such agreement was embodied in a contract between the street railroad company and the city, and ratified by a resolution of the common council on a new consideration moving from the railroad. *Held*, that special acts of the Legislature authorizing the municipal authority to assess on the property of the railroad the expense of paving between the tracks, and Railroad Law, § 98 (Laws 1890, p. 1112, c. 565, as amended Laws 1892, p. 1404, c. 676, § 98), requiring street railroads to make such pavements or defray the expense thereof, were, as concerned the railroad in question, inoperative and void.

Appeal from Trial Term, Monroe County.

Action by the city of Rochester against the Rochester Railway Company. Complaint dismissed, and plaintiff appeals. Affirmed.

The following is the opinion of the court below (NASH, J.):

This action is brought to recover of the defendant the expense of paving between the tracks, the rails of the tracks, and two feet outside of the tracks of the defendant's railway, on North St. Paul street and Park avenue, in the city of Rochester.

In the case of Conway v. City of Rochester, 157 N. Y. 33, 51 N. E. 395, an action brought by a taxpayer to restrain the letting of the contract to pave Lyell avenue, on the ground that the city authorities had omitted to require the railway company to pave that portion of the street between the tracks, the rails of the tracks, and two feet outside, it was held that the provision of section 98 of the railroad law (Laws 1890, p. 1112, c. 565, as amended Laws 1892, p. 1404, c. 676, § 98), which requires that every street surface railroad corporation, so long as it shall continue to use any of its tracks in any street, avenue, or public place in any city or village, shall have and keep in permanent repair that portion of such street, avenue, or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, was in full force and effect as to all of the streets in which the Rochester Railway Company owned and operated a street railway.

The Rochester Street Railway Company was not a party to that action, and upon the facts which now appear, claims that, as to the street for the expense of paving of which this action is brought, the statute is inoperative and void, for the reason that it impairs the obligation of certain existing contracts operative as between the city and the railway company.

On or about May 31, 1862, the Rochester City & Brighton Railroad Company was duly incorporated under and pursuant to the provisions of the general railroad act of 1850 (Laws 1850, p. 211, c. 140). The route described in the articles of association of the Rochester City & Brighton Railroad Company is identical with certain of the routes described in the articles of association of the defendant. On or about the 24th day of June, 1862, the common council of the city of Rochester, in the exercise of the authority conferred upon it by the general railroad law of 1850, consented to the construction by the Rochester City & Brighton Railroad Company of a street surface railroad upon the routes designated in its articles of association, and one of the conditions of the grant was that the grantee should improve with suitable materials, as required by the common council of the city, and in a proper manner, between its tracks, the rails of its tracks, and for two feet four inches outside thereof, and should keep the surface of the street inside the rails, and for two feet four inches outside thereof, in good repair. Thereafter, and on the 8th day of July, 1862, the Rochester City & Brighton Railroad Company duly adopted the grant, subject to the provisions and restrictions therein contained. On or about the 16th day of October, 1862, the Rochester City & Brighton Railroad Company mortgaged its rights, privileges, property, and franchises to Hobart F. Atkinson, as trustee. This mortgage was duly foreclosed, and at the foreclosure sale the rights, privileges, property, and franchises of the Rochester City & Brighton Railroad Company were purchased by one Chauncey B. Woodworth. After the acceptance of said franchise from the city of Rochester, and before default in the fulfillment of the conditions of said mortgage, the said Rochester City & Brighton Railroad Company proceeded to and did construct its said railroad in a number of the streets named in the said resolution of the common council and in its articles of association, and thereafter it operated its cars thereon, and duly complied with all the provisions of said ordinance. On or about March 5, 1868, pursuant to the statutes of the state, Mr. Woodworth duly associated with himself as such purchaser certain persons, and duly incorporated a company by the name of the "Rochester City & Brighton Railroad Company," for the purpose of operating the railroad theretofore operated by its predecessor corporation, the Rochester City & Brighton Railroad Company. By the terms of these last articles of association the company was to continue for 99 years.

Immediately after the incorporation of the new corporation, known as the "Rochester City & Brighton Railroad Company," by the purchaser and his associates, the new company petitioned the common council, protesting against the onerous condition of the resolution of 1862, above quoted, and setting forth

the inability of the new corporation to proceed with the operation of the railroad subject to such conditions, and the fact that the road had never paid, owing to the existence of such conditions. Thereafter, and for the space of upwards of a year, the question was debated in the common council, committees appointed, and various hearings had, and proofs offered by the company as to the expense of building, maintaining, and operating the road, and finally the common council, on the 12th day of January, 1869, duly amended section 2 of the ordinance of 1862, so as to read as follows: "The track of said railroad shall be laid so as to permit the free passage of vehicles and carriages over the same, and the rails shall be laid even with the surface of the streets and shall conform to the grades thereof as now established, or as they shall from time to time be established or altered. Said company shall, as soon after the adoption of this ordinance as the condition of the streets through which their tracks are laid will permit, put the surface of said streets inside the rails and for one foot outside thereof, in good and thorough repair, under the direction of the committee on streets and bridges of the common council, and shall thereafter keep said streets in good repair inside its tracks or between the rails of their tracks, only during the term of five years, and whenever it becomes necessary to improve by ordinance or otherwise, any of the streets through which their track is laid, with a new or permanent improvement, said company shall not be required to make any part or portion thereof, nor bear any part or portion of the expense of making the same during the term of five years from the adoption of this ordinance."

Shortly after the adoption of said resolution the Rochester City & Brighton Railroad Company caused to be prepared and submitted to the city authorities a proposed act for the Legislature, legalizing the action of the common council, and the same was transmitted to the common council by the mayor of the city, with a written request that the common council by resolution approve and direct the clerk to transmit the bill to the Legislature, whereupon the common council adopted the following resolution: "Resolved, that the clerk of this board be authorized to transmit a copy of the bill relating to street railroads, presented by the mayor to this board, to the Legislature, requesting said body to legalize the action of the common council by the passage of said bill." On or about the 12th day of February, 1869, said act was passed by the Legislature, and duly signed by the Governor, and is entitled "An act for the relief of the Rochester City and Brighton Railroad Company," and is known and designated as chapter 34. p. 54, of the Laws of 1869. The said act provides as follows: "Sec. 5. Said company shall put, keep and maintain the surface of the streets inside the rails of its tracks in good and thorough repair, under the direction of the committee on streets and bridges of the common council of said city of Rochester; and whenever any of said streets are by ordinance or otherwise permanently improved, said company shall not be required to make any part or portion of such improvement, or bear any part of the expense thereof, but shall make its rails in such street or streets conform to the grade thereof."

Thereafter the said Rochester City & Brighton Railroad Company continued to maintain and operate its street surface railroad under the general statutes of the state of New York, and, with the consent of the common council, extend its railroad into many other streets and parts of streets in the city of Rochester, incurring thereby large expenses, and expending large sums of money therefor, the exact amount of which does not appear. The company kept in repair the pavement as required, but whenever a street was improved by a new pavement it was not called upon by the authorities of the city of Rochester to make or pay for any part of such improvement. On the 18th day of May, 1880, the common council of the city of Rochester re-enacted the ordinance of 1862, as amended in 1869.

On the 29th day of March, 1887, the common council of the city passed an ordinance in relation to street railroads, section 2 of which ordinance is as follows: "Sec. 2. The track of said railroad shall be so laid as to permit the free passage of vehicles and carriages over the same, and the rails shall be laid even with the surface of the streets and avenues, and shall conform to the grades thereof, as now established, or as they shall from time to time be

established or altered. As soon after the adoption of this ordinance as the condition of the streets and avenues through or along which any street surface railroad track is now laid will permit, the surface of such streets and avenues inside the rails of all tracks authorized to be laid prior to May 6, 1884, and between the tracks and rails of such tracks and for a space two feet in width outside and adjoining the outside rails of the track of any and all extensions or branches of any railroad authorized to be constructed since May 6, 1884, shall be put in good and thorough repair by the company under the direction of the executive board of said city, and thereafter at all times the same shall be in like manner and degree kept and maintained; as to the tracks authorized to be maintained or laid prior to the 6th day of May, 1884, the surface of said streets and avenues inside and between the rails thereof, and roads, and any and all extensions and branches of any roads authorized to be constructed or laid since May 6th, 1884, between the tracks and the rails of the tracks, and a space two feet in width outside and adjoining the outside rails of the track or tracks."

On the 21st of January, 1890, the Rochester City & Brighton Railroad Company petitioned the common council for permission to change its motive power from horse to the overhead system of electricity, commonly known as the "trolley system." The prayer of the petition was duly granted by resolution of the common council, in which it was provided "that the consent and permission of the city of Rochester is hereby granted to the Rochester City & Brighton Railroad Company, its successors and assigns, in addition to the rights, privileges and franchises now possessed by it, to establish, construct, maintain, operate and use the overhead single trolley electric system of motive power, so called in the operation of its cars, in and on each and all of the streets, avenues and public places in the city of Rochester, in, along, through and upon which said company has constructed and is now maintaining and operating a street surface railroad, and to construct, set, lay, maintain and use the poles, wires, appliances and such electrical appliances and apparatus, and to make the underground and surface alterations to, and on each and all of the said streets, avenues and public places so far as necessary for that purpose; but said company, its successors and assigns, shall not have the right to construct and operate said electric railroad in any street until the requisite consents of property owners on such streets, avenues or places, and the consent of the Board of Railroad Commissioners of the state of New York, shall be obtained as required by law."

The material to be used and the manner of construction and maintenance were particularly set forth in the resolutions, and it was further provided that, before the grant and consent should become operative, the said company should deliver to and leave with said committee a written agreement with the city to accept, and in each and every particular to comply with, each and all of the provisions contained in the resolutions, and to well and truly at all times comply with all ordinances and resolutions of the common council of said city, not in conflict therewith, which had at any time before or which might at any time thereafter be passed, relating to the rate of speed, etc., and the general repairs of the streets within and for two feet outside of and adjoining said company's track or tracks.

In accordance with and pursuant to said resolutions, the Rochester & Brighton Railroad Company on the 25th of February, 1890, made and entered into the proposed contract in writing, by which the company accepted the conditions imposed, and agreed to comply with all the ordinances and resolutions of said common council, not in conflict with said resolutions, which had at any time before or which might be at any time thereafter passed, relating to the rate of speed, etc., and the general repairs of the streets within and for two feet outside of and adjoining said company tracks.

On the 25th of February, 1890, the Rochester City & Brighton Railroad Company duly executed and delivered to the defendant a lease of all its property, franchises, rights, and privileges, of every kind and description, for the unexpired term of its charter, pursuant to the provisions of the statutes of the state in such case made and provided. The defendant duly accepted said lease, and thereupon entered into the possession of the demised railroad and property; and thereafter, and in the year 1890, the defendant, being the

lessee of the Rochester City & Brighton Railroad Company, duly acquired, pursuant to the statutes of the state, the entire capital stock of the Rochester City & Brighton Railroad Company.

Thereafter, in the year 1890, the defendant applied to the Board of Railroad Commissioners of the state of New York for permission to change the motive power of the railroad so acquired by it, and of such extensions thereof as were contemplated and as were embraced in its articles of association, and in said act of 1896, from horse power to electricity. That such proceedings were thereupon had that in said year the Board of Railroad Commissioners of the state of New York duly granted such permission to the defendant, and the property owners in the several streets in which such change was to be made duly gave their consent to such change. Immediately thereafter, beginning in the year 1890, the defendant, at great expense, proceeded to and did reconstruct the entire railroad which it had acquired from the Rochester City & Brighton Railroad Company, and equipped the same with electrical appliances. That in making such change of motive power to electricity, as aforesaid, it became and was necessary for the defendant to, and the defendant did, reconstruct in its entirety the road so acquired by it as aforesaid, including the replacing of the ties, rails, and foundation with new material, and in replacing all of the cars with new motor power. That previous thereto the cars of said company running on said railroad were operated by horse power.

The defendant, in acquiring the capital stock of the Rochester City & Brighton Railroad Company, and in the conversion of said railroad from a horse railroad to an electrical railroad, and in the reconstruction and re-equipment thereof, had, prior to the commencement of this action, expended upwards of $4,000,000, and that such expenditure was made by the defendant in reliance upon the provisions of said act of 1869, and in reliance upon said contract of February 25, 1890.

After the making of the said contract of February 25, 1890, and up to the time of the lease to the defendant, the said Rochester & Brighton Railroad Company duly complied with and performed all the conditions of the said contracts by it agreed to be performed, and that since the making of said lease the defendant has duly complied with and performed all the conditions and obligations of said contracts on its part to be performed, but it never, prior to March 16, 1897, constructed or paid for any portion of a new pavement in any street or streets through which it maintained and operated its railroad. That since the passage of the act of 1869, and up to March 16, 1897, neither the Rochester City & Brighton Railroad Company nor the defendant has ever been assessed for or required to pay any portion of the expense of a new or permanent improvement of any portion of any street, avenue, or highway in which the Rochester City & Brighton Railroad Company obtained its franchise or constructed its road prior to the 6th day of May, 1884. That after the passage of chapter 252, p. 309, of the Laws of 1884, the Rochester City & Brighton Railroad Company obtained from the municipal authorities of the city of Rochester various consents to extend its tracks and railroad into various streets of the city of Rochester, and the municipal authorities of the city of Rochester have from time to time granted such consents upon the condition provided for in chapter 252, p. 309, of the Laws of 1884, as follows: "Upon the express condition that the provisions of chapter 252 of the Laws of 1884 pertinent thereto shall be complied with;" and since the lease of the defendant of the property and franchises of the Rochester City & Brighton Railroad Company, and the filing of the certificate of the acquisition of all of its capital stock, the defendant has applied to the municipal authorities of the city of Rochester for consent to extend its railroad into various streets in the city of Rochester named in its articles of association or in certificate of extension filed by it, and the municipal authorities have granted such right or franchise to make such extension since the passage of the general railroad act, known as the "Railroad Law," and such consents have annexed the condition required by the provisions of the general railroad act, as follows: "That the foregoing consent is given upon the following conditions expressly, to wit: that the provisions of article 4 of the railroad law pertinent thereto shall be complied with." And both the Rochester City

& Brighton Railroad Company and the defendant acted upon such consents, and made and built the extensions into such various streets under such consents.

On the 11th of December, 1894, the defendant presented to the common council of the city a petition, stating that the location of the track of the Rochester City & Brighton Railroad Company and other railroad companies to the rights of which the defendant had succeeded, and the tracks of the railroad of the defendant as laid, had not been fixed with due and proper formality, although resolutions from time to time granting the right had been passed by the common council, and the consents of property owners obtained; and that, the defendant having substantially completed its system of operating its cars with electric motive power, it seemed right and proper that a formal resolution of the common council should be passed ratifying and approving of the location of its tracks, poles, wires, and appurtenances as then at present located and constructed.

The defendant, therefore, made application for the consent of the authorities of the city to the location, construction, operation, and maintenance of its railroads in, through, along, and upon the streets of the city where it had been constructed, setting forth a description of the location of the tracks, etc., in each of the streets in which the defendant had constructed its tracks, which description included the said two streets, North St. Paul street and Park avenue.

Thereupon the common council passed an ordinance containing the conditions upon which the city would grant the prayer of the petition, and directed the city attorney to prepare a contract in accordance therewith.

The contract was so made and executed by and on behalf of the city and the defendant on the 31st of December, 1894. It provided that the defendant would in each and every particular comply with the conditions contained in the resolutions adopted by the common council, and, on the part of the city, that it thereby ratified and confirmed the location of the railroad and tracks of the defendant as set forth in the resolutions, in accordance with the conditions therein expressed.

The conditions imposed, including the consideration moving to the city, set forth in the resolutions, were as follows:

"Resolved, that the location of the railroad and tracks of the said Rochester Railway Company as now operated and used by the said company in the streets, avenues, and highways, hereinafter specifically described, is hereby ratified and approved, subject to such changes and alterations as the common council may from time to time direct, and subject to all the rights and privileges now possessed by the city under existing contracts or agreements, or by law, nevertheless upon the following conditions:

"First—That the provisions of article 4 of the railway law of the state of New York, being an act in relation to railroads, constituting chapter 39 of the General Laws of the state of New York, be complied with.

"Second—In order to increase the efficiency of the police system of said city, and that peace and good order may at all times be maintained in said city, and upon the cars of said company, and that the movement of the cars of said company be not interfered with by riotous or unlawful proceedings, that the said company, its successors or assigns, furnish transportation without other consideration than the execution of an agreement on the part of said city, embodying the terms of these resolutions, to not more than two policemen at a time upon each of the cars of said company, such transportation to be furnished only when said policemen are in full uniform, and such transportation to continue as long as the Rochester Railway Company, its successors and assigns shall operate, maintain and use its railroad in said city.

"It is further provided, that on the written request of the superintendent of police, the said railroad company shall issue to the active detectives of the police force, to the number of not more than nine, tickets for not more than one hundred rides for each detective on the cars of the company in any one month.

"Third—In order that opportunity may be at all times afforded to the members of the paid fire department of said city to reach quickly the locality

of any conflagration, that said company shall furnish like transportation for the same consideration hereinbefore expressed to not more than two firemen at a time upon each of the cars of said company, such transportation to be furnished only while said firemen are in full uniform and said transportation to continue so long as the Rochester Railway Company, its successors and assigns, shall operate, maintain and use its railroad in said city.

"Fourth—That all the provisions of any agreement between the city of Rochester and any street railroad company and all ordinances, resolutions, grants and consents heretofore passed by said city, with reference to the construction, maintenance or operation of any street railroads within said city shall not be construed as extending or affecting the franchise of any such company, or the time of the expiration of any such franchise. or the moneys required to be paid to said city by such company, or as repealing, modifying or changing in any respect the terms or provisions of any agreement previously entered into between said city and any street railroad company.

"Fifth—That this ratification and confirmation of the location of the railroad and tracks of said company shall have the same effect as if said railroad and tracks had originally been laid with the proper consent and authority of said city, and no other effect or construction.

"Sixth—Said Rochester Railway Company, however, for the same consideration, agrees for itself, its successors and assigns, upon the written order of the mayor, superintendent or chief of police, or fire commissioner of said city, or officers performing their duties, in cases of emergencies, to transport upon each of its cars any number of policemen or firemen."

Thereafter, and beginning March 16, 1897, and thereafter from time to time up to and after the decision of the Court of Appeals in Conway v. City of Rochester, decided on the 18th day of October, 1898, the plaintiff claimed that the defendant was liable to pay for all paving when a street was improved with a new pavement between its tracks, the rails of its tracks, and two feet outside, and the defendant claimed that it was not liable to pay for such paving in any street or streets where it or its predecessor, the Rochester City & Brighton Railroad Company, had obtained a franchise or constructed its railroad prior to the taking effect of the railroad law passed by the Legislature of the state of New York in the year 1890. In the year 1899 the plaintiff commenced actions in the Supreme Court of the state of New York against the defendant to recover the expense of paving between the tracks, the rails of the tracks, and two feet outside, in a large number of streets in which the defendant was operating its street railway, in some of which the franchise had been obtained and the railroad constructed by the Rochester City & Brighton Railroad Company prior to the 6th day of May, 1884, and in some cases where the franchises had been obtained and the railroad constructed between the 6th day of May, 1884, and the 1st day of May, 1891, and in some of which the franchise had been obtained and the road constructed after the 1st day of May, 1891. The defendant imposed defenses to such actions, and the same were, at the time of the making of the contract hereinafter referred to, pending undetermined. That thereafter, and in the years 1899 and 1901. the Legislature of the state of New York passed a large number of special acts authorizing the municipal authorities of the city of Rochester to assess upon the property of the defendant, in the same manner that assessments were made upon the property of other persons for public improvements, the expense of paving between the tracks, the rails of the tracks, and two feet outside, in different streets which had been paved by the city of Rochester after the month of October, 1893, in which streets the defendant owned and operated its street surface railroad, and in some of which streets the Rochester City & Brighton Railroad Company had obtained its franchise and constructed its road prior to the 6th day of May, 1884. That. under and pursuant to such special acts, assessments were made against the property of the defendant in each of said streets for the expense of paving the space aforesaid in the street in which such pavement was made, and the defendant commenced an action against the plaintiff, in the Circuit Court of the United States for the then Northern District of New York, for the purpose of vacating and setting aside all of such assessments, upon the ground that the acts of the Legislature of the state of New York under which such assess-

ments were made were, and each of them was, void, and in controversion of the provision of the Constitution of the state of New York and of the Constitution of the United States. That, while all of such actions were pending undetermined, the Legislature of the state of New York, on the 26th day of April, 1901, passed chapter 562, p. 1371, of the Laws of that year, entitled "An act to authorize and empower the city of Rochester to enter into a contract with the Rochester Railway Company adjusting and settling all differences between the city and the said railway company as to the amount due and owing from the company to the city for certain pavements heretofore made by the city, pursuant to section 98 of the railroad law and providing for the payment of the same." That such act authorized the plaintiff and defendant to enter into a contract for the settlement of all such claims.

Thereafter, and on the 27th day of April, 1901, plaintiff and the defendant entered into an agreement dated that day, duly executed and acknowledged by the plaintiff by George A. Carnahan, its mayor, and executed and acknowledged by the defendant by its president, and attested by its secretary under the corporate seal, and approved by the corporation counsel of the plaintiff, which contract recited the matters in difference between the city and the defendant, and in settlement thereof provided that the defendant should pay to the city, in full satisfaction and discharge of its claims for paving, the sum of $386,632.46, and the defendant agreed to waive any claim for exemption from paving for pavements thereafter laid in streets in which it or the Rochester City & Brighton Railroad Company obtained a franchise and constructed tracks after May 7, 1884, but that "as to all claims which may hereafter be made by the city against the railway company, for all pavements hereafter made in streets or parts of streets in the said city, in which the Rochester City and Brighton Railroad Company obtained its franchise or constructed a railroad prior to the 7th day of May, 1884, the question of the liability of the railroad company to pay for making pavements in such streets, or parts of streets, between its tracks, the rails of its tracks and two feet outside, or any part thereof, shall be litigated and determined in a court having jurisdiction,—such questions to be raised as speedily as possible, in such manner as may be agreed upon by the corporation counsel of the city and the counsel of the railway company, and such questions to be finally judicially determined in the courts. It being expressly agreed and understood between the parties hereto that the question of the liability of the railway company to pay for paving hereafter made in any such streets or parts of streets in which the Rochester City and Brighton Railroad Company obtained its franchise or constructed a railroad prior to the 7th day of May, 1884, is not conceded by the railway company, or waived by the city, but shall be judicially determined finally as aforesaid."

The Court of Appeals, in the Conway Case, did not have before it the several ordinances and agreements constituting the various contracts made by and between the city of Rochester and the Rochester City & Brighton Railroad Company and the Rochester Railway Company. The contention on behalf of the city there was that the provisions of the general railroad act of 1890, amended in 1892, only required repairs to be made by railroad companies, and did not include the construction of new pavements, and, if new pavements were included, the Rochester Railway Company was exempted by a special statute from making or contributing toward the expense thereof. Although reference was made to the act of 1869 for the relief of the Rochester City & Brighton Railroad Company, in the brief of counsel for the city, no allusion or reference is made to that act in the opinion.

It seems to be well-settled law that the ordinances or resolutions of the common council of a city, consenting to the use of its streets by a railroad corporation, when accepted by the corporation, constitute a contract.

In the case of the Brooklyn Central Railroad Company v. The Brooklyn City Railroad Company, 32 Barb. 358, it is said, speaking of the resolutions of the common council of the city of Brooklyn granting its assent to the construction of a railroad, "The resolution * * * constituted a contract which the company was bound to perform, and which the common council could not rescind without adequate cause." Page 364. Again, on page 366 of the same case, reference is made to the observations upon the same question

by Chancellor Kent, as follows: "Speaking of franchises, Chancellor Kent, in his Commentaries, says (volume 3, p. 458): 'They contain an implied covenant on the part of the government not to invade the rights vested, and on the part of the grantees to execute the duties and conditions prescribed in the grant. The government cannot resume them at pleasure, or do any act to impair the grant without a breach of the contract.'"

In Milhau v. Sharp, 27 N. Y. 620, 84 Am. Dec. 314, the court, in considering a resolution of the common council of the city of New York granting authority to contract and operate a railroad, says: "It was not, as has been insisted, an act of legislation, but, on the contrary, possesses all the characteristics of, and was in fact, a contract. It was held to be a contract in the case of The People v. Sturtevant, 9 N. Y. 273 [59 Am. Dec. 536], and but a slight examination of its provisions is requisite to show the correctness of that decision. Prior to its acceptance by the defendants, the resolution was only a proposition, having no binding force whatever. It was certainly not then a law, and since that time the common council have taken no action upon it. Upon its acceptance (if valid), it became a contract between two parties, binding each to the observance of all its provisions. * * * The defendant's counsel insists that the resolution is not a contract, but a license, revocable at the pleasure of the common council. This proposition cannot be reconciled with the decision in The People v. Sturtevant, supra, nor with the principle declared by the Supreme Court of the United States in the Dartmouth College Case, 4 Wheat. 519 [4 L. Ed. 629], and other kindred cases in substance, that grants of such franchises, though made by acts in form legislative, become, when accepted and acted upon, contracts, not subject to be recalled or modified, except in accordance with express reservations contained in the grants."

In Skaneateles Waterworks Co. v. Village of Skaneateles, 161 N. Y. 154, 55 N. E. 562, 46 L. R. A. 687, the court had under consideration the effect of certain statutes affecting the rights of the parties. The opinion, at page 166, states: "We are thus brought to an examination of the statutes, and our first inquiry will be whether they merely threaten parties in the plaintiff's situation with the consequences of local municipal competition, or constitute an invasion of their grants. The former, as we have seen, is permissible. But the latter may not be done, for the doctrine has been settled since the Dartmouth College Case, 4 Wheat. 518 [4 L. Ed. 629], that a grant of corporate powers by the sovereign to an association of individuals for public use constitutes a contract, within the meaning of the federal Constitution, prohibiting a state legislature from passing laws impairing its obligations. In the recent case of Pearsall v. Great Northern Railroad Company, 161 U. S. 646 [16 Sup. Ct. 705, 40 L. Ed. 838], the court, after a brief review of the Dartmouth College Case, said: 'Subsequent cases have settled the law that, wherever charter rights have been acquired by virtue of the corporate charter, such rights, so far as they are necessary to the full and complete enjoyment of the main object of the grant, are contracts, and beyond the reach of destructive legislation.' Intermediate the cases cited, there are many cases in the Supreme Court of the United States in which the doctrine referred to has been either asserted or made the basis for the decision, as in New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650 [6 Sup. Ct. 252, 29 L. Ed. 516]; New Orleans Waterworks Co. v. Rivers, 115 U. S. 674 [6 Sup. Ct. 273, 29 L. Ed. 525]; Louisville Gas Co. v. Citizens' Gas Co., 115 U. S. 683 [6 Sup. Ct. 265, 29 L. Ed. 510]. These were cases where the grants were of an exclusive right to supply gas or water to a municipality. That court has taken frequent occasion to assert the inviolability of corporate charters in cases respecting the power of taxation, and, in a series of decisions extending over many years, has held that a clause in a contract imposing taxes in lieu of other taxes, or all taxes to which the stockholders would be subject, is impaired by legislation raising the rate of taxation or imposing taxes other than those specified in the charter."

Therefore it must be held here that by the ordinance of January 12, 1869, relieving the Rochester City & Brighton Railroad Company from making any new pavement, approved by the act of the Legislature (Laws 1869, p. 54, c. 34) specifically providing that said railroad company should keep the surface of the streets inside of its tracks in repair, but that, whenever any of said

streets were permanently improved, said company should not be required to make any part or portion of such improvements, under which ordinance and enactment the railroad company continued to maintain and operate its street surface railroad and extend its railroad in other streets and parts of streets in the city, a contract was made and entered into by and between the city and the railroad company from the provisions of which neither, without the consent of the other, was at liberty to depart; so that, from the time of the passage of the amended ordinance in 1869 to the time of the enactment of the law of 1884 (Laws of that year, p. 309, c. 252) providing for the construction, extension, maintenance, and operation of street surface railroads, the Rochester City & Brighton Railroad Company was required to keep and maintain the surface of its streets inside the rails of its tracks in good and thorough repair, but was not required to make or bear the expense of any part or portion of any permanent improvement of the streets in which its tracks had been laid, or any extensions thereof, prior to May 6, 1884, the date of the passage of chapter 252, p. 309, of the Laws of that year.

The brief of counsel for the city states that the action is brought under the Laws of 1884, "which directs that the street railway companies shall, in case of repaving or repairing pavements in the streets of cities, provide at their own expense such repaving or repairs, and in case of neglect the local authorities may themselves perform the work and call upon the railway companies for payment therefor." That act provides, as stated in the title, for the construction and extension of street surface railroads, and its provisions regulate the manner and terms and conditions upon which corporations may be formed for the purpose of constructing, maintaining, and operating street surface railroads, and for the construction by any existing street surface railroad company of extensions of its lines or branches thereof. "Sec. 9. Every such corporation incorporated under, or constructing, extending or operating a railroad constructed or extended under the provisions of this act, within the incorporated cities and villages of this state, shall also whenever and as required under the supervision of the proper local authorities have and keep in permanent repair the portion of every street and avenue between its tracks, the rails of its tracks, and a space two feet in width outside and adjoining the outside rails of its track or tracks so long as it shall continue to use such tracks so constructed under the provisions of this act." Laws 1884, p. 313, c. 252. This provision applies, as it clearly appears from the context of the section, and also from the various provisions of the other sections of the act, to the tracks of street surface railroad companies incorporated under its provisions, and to the tracks only of an extension of the lines or branches of the railroad of an existing street surface railroad company. That the act was not intended to regulate the operation of the railroad of an existing street surface railroad company is expressly shown in the section providing for the regulation of fares, as follows: "Sec. 13. No company or corporation incorporated under, or constructing and operating a railroad under the provisions of this act, shall charge any passenger more than five cents for one continuous ride from any point on its road or on any road or branch operated by it or under its control, to any point thereon or on any connecting branch thereof within the limits of any incorporated city or village. This section shall not be construed to apply to any part of any road heretofore constructed and now in operation unless such company shall acquire the right to extend such road, or to construct branches thereof under the provisions of this act, in which event its rate of fare shall not exceed its authorized rates prior to such extension." If, however, the provision of the act can be regarded as broad enough to apply the provisions of section 9 to the entire railroad of any existing street surface railroad company extending its lines under the provisions of the act, then such provisions are unconstitutional, as being violative of the existing contract between the city and the Rochester City & Brighton Railroad Company, to all the rights of which company the defendant has succeeded. Gilmore v. City of Utica, 121 N. Y. 561, 24 N. E. 1009.

It is further urged in behalf of the plaintiff that the defendant has expressly assented to the right of the city to exact the payment now in suit, and effectually waived any claim that it might have for exemption, by assenting to the terms and conditions upon which the common council definitely fixed and confirmed the right of the defendant to the location of its tracks

as the same stood in December, 1894, upon condition that article 4 of the railroad law (which is the codification of the statute of 1884) be fully complied with by the defendant. It may be said that such assent of the city to the location of the defendant's tracks as the same had been laid under approval and consents obtained from time to time was a mere formality; no new or additional franchise being granted by such ratification and approval, the conditions imposed were violative of the previously existing contracts. But the resolution of the common council that the provisions of article 4 of the railway law should be complied with, assented to by the defendant, is modified, and the rights of the parties specifically stated and determined, by the subsequent provision that all of the provisions of any agreement between the city of Rochester and any street railroad company, and all ordinances, resolutions, grants, and consents heretofore passed by said city with reference to the construction, maintenance, or operation of street railroads within said city, shall remain in full and binding force; and these resolutions shall not be construed as repealing, modifying, or changing in any respect the provisions or terms of any agreement previously entered into between said city and any street railroad company. Moreover, further exactions were made by the city in requiring the defendant, as long as its successors and assigns should operate, maintain, and use its railroad in said city, to furnish free transportation on its cars to the police and firemen of the city, for which there was no equivalent except the resolution of the common council ratifying and approving the location of the railroad and tracks of the defendant as the same were then operated and used.

It is argued on behalf of the city that the special acts of the Legislature authorizing the municipal authorities of the city to assess upon the property of the railroad company, in the same manner that assessments are made upon the property of other owners benefited by the improvement of the streets, the expense of paving between and outside the railroad tracks, is not violative of the rights of the defendant, as impairing the obligations of its contract with the city; citing Lake St. R. R. Co. v. City of Chicago, 183 Ill. 75, 55 N. E. 721, 47 L. R. A. 624; Lincoln St. Ry. Co. v. City of Lincoln (Neb.) 84 N. W. 802; Storrie v. Houston City St. Ry. Co. (Tex. Sup.) 46 S. W. 796, 44 L. R. A. 716; New York, L. E. & W. R. R. Co. v. City of Dunkirk, 65 Hun, 494, 20 N. Y. Supp. 596, affirmed 143 N. Y. 659, 39 N. E. 494.

In Lake St. El. R. R. Co. v. City of Chicago there was simply an ordinance granting authority to an elevated railroad company to maintain and operate its road, requiring it to restore and put in good condition pavements, etc., in case they were disturbed in constructing the road. It was held that the ordinance was not a contract which precluded a subsequent assessment of the company's property for the local improvement of the street, the same as any real estate contiguous to the improvement.

In Lincoln St. Ry. Co. v. City of Lincoln, chiefly relied upon in support of this contention, the ordinance submitted to the electors the proposition of giving their consent to the construction and operation of a railway; provided that "such railway track shall be so constructed as to present the least practical obstruction to the ordinary public use of the streets, and that it shall, when required, conform to the established grades of the streets as now or hereafter to be established, when such streets are brought to grade; and further, said railway company shall be subject to all reasonable regulations in the construction and use of said railway which may be imposed by ordinance"—held, assuming that such provisions became a part of the charter of the corporation, having the elements of a contract with respect thereto, that an exemption for assessment for the improvement of the street was not created, and the Legislature was not thereby prohibited from imposing a liability on such corporation to pave part of the street occupied by its tracks in conformity with the improvement of the remainder of the street. Held, further, that a charter or grant of franchise rights to a corporation is to be construed strictly, and a claim of exemption cannot be sustained which is not in express terms granted, or clearly implied from the terms of the grant.

In Storrie v. Houston St. Ry. Co. it was held that an enlargement of the liability of a street railway company for paving a street is not unconstitutional where the company's rights were acquired subject to the constitutional

provision that all privileges and franchises shall be subject to legislative control.

In New York, L. E. & W. R. R. Co. v. City of Dunkirk it was held merely that the Legislature has absolute authority over the subject of taxation, and that, as the railroad corporation was a creature of the statute, the Legislature might impose upon it burdens additional to those prescribed by its charter.

These cases in effect merely uphold the power of the Legislature to declare that the property of a street surface railway company is of a character to be substantially and directly benefited by the improvement of a street, and that in proportion as it is benefited may be assessed in common with other property on the street.

In Covington v. Kentucky, 173 U. S. 231, 19 Sup. Ct. 383, 43 L. Ed. 679, cited in support of the plaintiff's contention, it was held that the provision in the act of the Legislature of Kentucky of May 1, 1886, that certain reservoirs, etc., with the land on which they were situated, which the city of Covington was by that act authorized to acquire and construct, should be and remain forever exempt from state, county, and city tax, did not, in view of the provision of the prior act of February 14, 1856 (Gen. St. Ky. 1888, p. 861, c. 68, § 8), that "all charters and grants of or to corporations, or amendments thereof, and all other statutes, shall be subject to amendment or repeal at the will of the Legislature, unless a contrary intent shall be therein plainly expressed," tie the hands of the commonwealth of Kentucky, so that it could not, by legislation, withdraw such exemption and subject the property to taxation. The pith of the decision, so far as is applicable here, is found in a single paragraph of the opinion of the court, in which it is said: "If that act [the act exempting the property from taxation] in any sense constituted a contract between the city and the commonwealth, the reservation in the existing general statute of the right to amend or repeal it was itself a part of the contract."

It will be observed that here, in the statute of 1869 legalizing the amended ordinance of the common council, it is expressly provided, without any reservation of a right to amend or repeal, that, whenever any of the streets of the city should by ordinance or otherwise be permanently improved, the railroad company shall not be required to make any part or portion of such improvement, or bear any part of the expense thereof. The legislative provision is in terms the same as that of the amended ordinance which was the basis of the contract with the Rochester City & Brighton Railroad Company, all of the provisions of which were expressly ratified and confirmed, upon further consideration moving from the defendant to the city, by the resolutions of the common council embodied in the contract made by the city with the defendant in 1894.

The provision for the exemption of the Rochester Railway Company from assessment upon its property of any part of the expense of the permanent improvement of any street or parts of streets of the city on which the tracks of the company or its predecessors were laid prior to the general act of 1884 is as absolute as that in any of the authorities cited in the opinion of the Court of Appeals, in the case of the Skaneateles Waterworks Co. v. Village of Skaneateles, in support of the inviolability of corporate charters respecting the power of taxation. 161 N. Y. 167, 55 N. E. 565, 46 L. R. A. 687.

In the case of the State of New Jersey v. Wilson, 7 Cranch, 164, 3 L. Ed. 303, it was held that "a legislative act declaring that certain lands which should be purchased for the Indians should not thereafter be subject to any tax constituted a contract which could not be rescinded by a subsequent legislative act, such repealing act being void under the clause of the Constitution of the United States which prohibits a state from passing any law impairing the obligation of contracts."

In State Bank of Ohio v. Knoop, 16 How. 369, 14 L. Ed. 977, the doctrine was applied to the provision of a general banking law, upon which the plaintiff bank received its charter, requiring banks to make semiannual dividends and set off 6 per cent. of such dividends for the use of the state, which sum or amount so set off should be in lieu of all taxes to which the company or the stockholders therein would otherwise be subject. This, it was held, was a legislative contract fixing the amount of taxation, which could not be

changed without the consent of the bank. In the course of the opinion it was said that "every valuable privilege given by the charter, and which conduced to an acceptance of it, is a contract which cannot be changed by the Legislature, where the power to do so is not reserved in the charter."

The state having adopted a new Constitution, in the case of Dodge v. Woolsey, 18 How. (U. S.) 331, 15 L. Ed. 401, it was held as follows: "The fact that the state Constitution has been changed since the passage of the act chartering the bank cannot release the state from the contract contained in the charter."

In McGehee v. Mathis, 4 Wall. 143, 18 L. Ed. 314, it was held that: "Where a state, in order to promote the sale and reclamation of its swamp lands, provides by legislation that such lands shall be exempt from taxation for the term of ten years, and issues transferable scrip receivable therefor, the contract arising between the state and a receiver of the scrip is impaired by a subsequent act of the Legislature repealing the exemption, although the land is not taken up and the scrip paid until after the passage of such act."

In the case of Binninger v. City of New York, 177 N. Y. 199, 69 N. E. 1120, to which attention is called, the question here under consideration was not before the court or under discussion. The resolution of the common council of the city of Brooklyn passed in the year 1853, authorizing the Brooklyn City Railroad Company to construct and operate a street surface railroad, was without legislative sanction. It was before the general railroad law empowering cities and villages to grant franchises to street surface railroad companies to construct and operate street railways, and therefore the resolution granting the franchise was beyond the power of the common council and void. Potter v. Collis, 156 N. Y. 16, 50 N. E. 413.

In the case of the Village of Mechanicville v. S. & M. Street R. Co., 35 Misc. 513, 71 N. Y. Supp. 1102, affirmed without opinion 174 N. Y. 507, 66 N. E. 1117, it was held that the franchise or contract given to the street railway corporation, as construed by the court, permitted a pavement of the kind adopted by the village. Having held it to be fairly to be presumed that neither of the parties expected or intended that the kind of pavement mentioned and originally provided for in their contract, in the changed circumstances which had arisen, should be laid, it was unnecessary for the court to go further in giving reasons for its decision.

In the Binninger Case and in the Mechanicville Case, Milhau v. Sharp, 27 N. Y. 611, 84 Am. Dec. 314, in which it was held that the power of a municipal corporation in respect to the control and regulation of the streets is held in trust for the public benefit, and without legislative sanction cannot be abrogated or delegated to private parties, was cited and applied.

Here the authority to grant the franchise given to the railway company has not only legislative sanction by special enactment, but the terms of the grant are by contract in writing, made and executed by the parties, expressly stipulated, and afterward, upon a new and valuable consideration, ratified and confirmed by resolution of the common council, formally affirmed by the terms of the contract entered into in accordance therewith.

The case here seems to furnish the strongest possible grounds for the application of the constitutional provision prohibiting the Legislature from passing laws impairing the obligation of contracts, and therefore it must be held that the special acts of the Legislature authorizing the municipal authorities of the city to assess upon the property of the defendant the expense of paving between the tracks, the rails of the tracks, and two feet outside, in the streets of the city in which the Rochester City & Brighton Railroad Company had obtained its franchise and constructed its road prior to the 6th day of May, 1884, are inoperative and void.

The complaint should be dismissed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

William A. Sutherland, for appellant.
Charles J. Bissell, for respondent.

PER CURIAM. Judgment and order affirmed, with costs, on opinion of NASH, J., delivered at Special Term.