FOSTER, sheriff, *v.* BROWN *et al.,* commissioners; *et vice versa.*

Nos. 15181, 15184. MAY 8, 1945. REHEARING DENIED JUNE 7, 12, 1945.

*Houston While,* for plaintiff.

*Harold Sheats, W. S. Northcutt, John L. Westmoreland,* and *John H. Hudson,* for defendants.

JENKINS, Presiding Justice. Under the agreed statement of facts, the substance of which we have sought to set forth, the court denied the petition of the sheriff plaintiff seeking a mandamus against the county commissioners. The question sought to be raised by both of the demurrers and the exception to this order of court resolves itself into the question whether, under the law and the undisputed facts, Grimes or Smithwick is entitled to the office of chief deputy sheriff. The briefs are voluminous; but we will state as we understand them the contentions of the litigants. The commissioners, who seek to uphold the claim of Grimes, the old incumbent, contend that the two constitutional provisions as proposed and subsequently ratified were not self-operative, but merely authorized the General Assembly to enact legislation under the authority thus given; and that, construing the law as it stands, Grimes should prevail on either of two theories: either because the civil-service statute (Ga. L. 1943, p. 971), with respect to the tenure of the chief deputy, is so contrary to the previous provisions as to tenure in the chief-deputy statute (Ga. L. 1939, p. 565) that the former statute must give way to the later statute, with the result that the sheriff does not have the right to appoint a chief deputy except under and in accordance with civil service rules; or else—construing the two acts together in the light of the two constitutional provisions authorizing them, as being remedial in nature, the first statute having been enacted, not for the benefit of the sheriff or his deputy, but for the public, in that it provides a quick method of carrying on the duties and functions of the office of sheriff upon a vacancy arising, without the trouble, expense, and delay of an election, and the second or civil-service statute having been enacted to promote and reward efficient service and to obtain the benefit of tried experience—the effect of the two statutes when construed together in the light of their constitutional authority is to allow the chief deputy to accede to the office of sheriff, in the event a vacancy arises, for the period pending a future election, but to preserve his status as chief deputy sheriff while thus

discharging, ad interim, the duties of sheriff, provided he does not offer himself as a candidate in the future election. On the other hand, the contention of the sheriff, who seeks to uphold the claim of the newly appointed Smithwick, appears to be that the constitutional amendments, which he says are mandatory and not merely permissive, themselves govern the case; and that, in construing them together as we should if possible, in the event of conflict the special provisions fixing the tenure of the chief deputy should be given effect over general provisions, that is, that any special provision fixing the tenure of the chief deputy sheriff should be construed as an exception to any contrary general provision under the civil-service amendment. Whether or not the two constitutional provisions, one the chief-deputy-sheriff amendment (Ga. L. 1939, p. 33), the other the civil-service amendment (Ga. L. 1939, p. 36) are, as claimed by the plaintiff in error, mandatory in character and therefore in a sense self-operative, or whether each merely authorized the legislature to enact legislation in pursuance of the authority thus conferred, would seem to throw great light upon the controlling question in the case. This is true for the reason that, if the latter interpretation be correct, if the amendments to the constitution are merely permissive, then in dealing with the two statutes—one passed in pursuance of the chief-deputy amendment, and the other in pursuance of the civil-service amendment—any actual conflict between any provisions in the two constitutional amendments would have to be resolved by the legislature itself; and, since it would not be compelled to follow either inconsistent alternative grant of authority, then the one it did actually follow would be effective; and, if by separate inconsistent statutes it sought to follow both, then the statute last enacted would necessarily be controlling over a previous inconsistent statute. It is elementary that some provisions of the constitution are self-operative. Others merely delegate permissive legislative authority to the General Assembly, in which latter case enabling acts are required in order to effectuate any change in the law. The proposed chief-deputy amendment which was subsequently ratified provided that "The General Assembly may provide," etc. The Code, § 102-103, declares that the word "may" ordinarily denotes permission, and not command. Where the word "may," as used in a statute, concerns the public interest or affects the rights of third

persons, it will be construed to mean "must" or "shall." This section appears to be a codification from language of this court in *Georgia, Florida & Alabama Ry. Co.* v. *Sasser,* 130 *Ga.* 394 (60 S. E. 997). This language, from which the Code section appears to have been derived, was used in a discussion with respect to a duty imposed upon a public official by a statute where the public interest or the rights of third persons are affected. It would strain the codified definition of the word "may" as used in "statutes" to make it apply to a constitutional proposal, especially where the language of the proposal itself contemplates legislative consideration. The ordinary meaning of the word "statute" is, a *law* established by legislative authority, as distinguished from the unwritten common law. Bouvier's Law Dictionary (Century ed.), 1129; An act proposing to amend the constitution is not a law. *Goolsby* v. *Stephens,* 155 *Ga.* 529 (2) 539 (117 S. E. 439). And then too the caption of the act proposing the amendment uses the language, "the General Assembly shall be given authority to provide," etc., and it is well recognized that the language employed in the caption can, in case of ambiguity, be used to interpret the language of the act. *Thomas* v. *Board of Commissioners of Chattooga County,* 196 *Ga.* 10 (2), 15 (25 S. E. 2d, 647); *Standard Steel Works Co.* v. *Williams,* 155 *Ga.* 177, 182 (116 S. E. 636); *Bentley* v. *State Board of Examiners,* 152 *Ga.* 836, 839 (111 S. E. 379); *Macon & Augusta R. Co.* v. *Little,* 45 *Ga.* 370 (6), 387. Therefore it seems clear that all this proposed amendment to the constitution did was to authorize the General Assembly in its discretion to enact a statute in conformity with the authority conferred. Similar language is employed in both the body and the caption of the act proposing a constitutional amendment with respect to civil service, although the body of that act uses the words, "The General Assembly shall have the authority," etc. As a matter of fact, it need not be conceded that the two proposed constitutional amendments would necessarily prove in any wise conflicting. The legislature did not and could not know which, if either, of the two proposals would be ratified by the people. If the chief-deputy-sheriff amendment should be approved, it could, under appropriate legislative enactment, be made to stand alone. If both were approved, the legislature could provide as it saw proper within the bounds of either of the two amendments. What actually hap-

pened was that the legislature, to begin with, put the provisions of the chief-deputy amendment in operation by way of an anticipatory act, conditioned upon the subsequent ratification of that amendment; and then, several years later and after the adoption of both amendments, put the civil-service provision into operation by passing a statute which in one respect was in direct conflict with the prior act dealing with the tenure of the office of chief deputy sheriff. In our opinion, since it is the statutes which must give effect to either of the two constitutional amendments, the provisions of the latter statute, as being the last expression of the intent of the legislature, should prevail, provided only it be authorized by constitutional authority. In our opinion it can not reasonably be said that the fixing of the tenure of the chief deputy sheriff in the chief-deputy amendment should be construed as constituting an exception to what the plaintiff in error calls the general provisions of the civil-service amendment, although this constitutes, as we see it, the strongest argument that he has so ably presented. We say this because, even though the legislature may have created the office of chief deputy sheriff for the tenure authorized by the constitutional amendment, we can see no reason why it could not thereafter put this office under civil service, as it was expressly authorized by constitutional authority to do. Not only was the act putting him under civil service authorized by express constitutional authority, and not only did it operate to extend what had been the previously prescribed tenure of office, but the civil service constitutional amendment, in order to make assurance doubly sure, by its terms expressly authorized the legislature "to enact laws establishing tenure of office for such employees and deputies," and it could hardly be said that the chief deputy is not a deputy. He is not only a deputy but the chief of all deputies, who under both the constitution and statute must be designated as such from among the list of deputies. He is either under civil service or he is not. Unless the chief deputies of the various offices of Fulton County be singled out from all the other deputies and excluded from the operation and protection of the civil-service act, passed in accordance with constitutional authority—unless this should and therefore must be done—there seems little if any ground for controversy. The civil-service amendment and the civil-service statute both seem to say plainly that these officers come within the

bounds of such protection—certainly so unless the chief deputies be adjudged not to be deputies at all. The civil-service amendment states plainly that the legislature can, under civil service, "establish his tenure of office." The legislature has done that which it was constitutionally authorized to do, and, in order to avoid any possibility of misinterpretation, has by explicit language stated that the status of the chief deputy under the civil-service law shall not be forfeited because he complies with his legal obligation and qualifies to perform, and thereafter as directed does perform, the duties of the office in which a vacancy has occurred pending the ensuing election. We can see no reason why an officer whose ordinary tenure of office is prescribed by a constitutional amendment authorizing the legislature to create the office, can not thereafter under express constitutional authority be put under constitutionally authorized civil service, thereby extending his previous constitutional tenure, especially so when the amendment to the constitution authorizing civil service expressly empowers the legislature to "establish his tenure of office." In other words, the fact that the tenure of an office may be prescribed by a constitutional amendment authorizing the legislature to create it, does not prevent the legislature, when acting under additional constitutional authority, from putting such office under civil service, merely because without civil service the tenure of the office had been prescribed. This does not amount to a contradiction in the two constitutional authorizations, but merely authorized two separate procedures, one for the ordinary tenure without civil service, the other for such tenure as the legislature itself may prescribe should it see proper to adopt civil service.

But the plaintiff in error makes numerous other contentions. He submits that section 5 of the civil-service *statute* itself expressly excludes the chief deputy from its operation, in that by this section the unclassified service are "officers elected by the people and persons appointed to fill vacancies in such elective offices;" and the argument is that, because the chief deputy may fill out the unexpired term of the sheriff in the event of a vacancy, he is therefore, within the meaning of the statute, appointed to fill a vacancy in an elective office. It would seem that the legislature, in order to forestall just such an interpretation of its statute as provided by subsection 5 (1) a (1), used this language: "Pro-

vided, in the offices of the clerk of the superior court, tax receiver, tax collector, sheriff and ordinary, if the chief deputy in any of said offices should elect not to be a candidate in the succeeding election, he shall revert to his former status in the classified service." The plaintiff in error further contends that even if a chief deputy sheriff is included by the terms of the civil-service statute, under the facts of this case it must be taken that no reference was made to the old incumbent Grimes, who refused to become a candidate for the office of sheriff in the subsequent election, but that the "reverter" clause in the act must be taken to refer to McAuliffe, the chief deputy appointed by Grimes upon assuming the duties of the office of sheriff following the death of Mount, the former sheriff. Such a contention would seem wholly inconsistent with the necessary import of section 5 of the civil-service act, and would, we think, render meaningless the language actually employed. The plaintiff in error further contends that, even though the provisions of the civil-service statute should be construed as including the chief deputy, then the act is unconstitutional as violating the provisions of the chief-deputy amendment to the constitution. This might be true if the civil-service statute had not been passed in conformity with the constitutional authority implicitly conferred by the civil-service amendment to the constitution. Such amendment to the constitution can not itself be said to be unconstitutional. As we see it, had not the constitutional amendment authorizing civil-service legislation been adopted, the legislature could not have provided a tenure for the chief deputy sheriff other than as authorized by the chief-deputy amendment, but the people in fact adopted both amendments. This being true, it appears that the only way by which the legislature could constitutionally extend the tenure of the chief deputy sheriff was by putting him under constitutionally authorized civil service. This it did in explicit terms. It seems to be conceded by the plaintiff in error that the deputy sheriffs, some sixty in number, come squarely within the provisions of the civil-service law. No one seems to question that under the chief-deputy constitutional amendment the new sheriff would be compelled to appoint his chief deputy from among the list of deputies holding under civil service. Therefore it would seem that all that section 5 (1) a (1) of the civil-service statute does is to freeze the chief deputy's status under the civil-

service law while serving out the unexpired term of the sheriff upon qualifying for such service as required both by the constitutional amendment and by the statute. Under the civil-service statute based upon constitutional authority establishing his tenure, he is not to be penalized for the performance of a duty imposed by law, but his rights as chief deputy sheriff under civil service are to be preserved.

As set forth in the statement of facts, the judge overruled the commissioners' demurrer to the sheriff's petition and also overruled the sheriff's demurrer to the commissioners' answer, after which he heard the case under an agreed statement of facts, and refused the mandamus absolute. It appears from the language of the judge's order in overruling the commissioners' demurrer to the sheriff's petition, that his reason for doing so was not to adjudicate adversely upon the legal questions hereinbefore set forth, but that his action was brought about by a failure of the sheriff's petition to set forth facts, later embodied in the agreed statement, such as would show the right of Grimes to the office of chief deputy sheriff. We can see how this view of the trial judge could be justified, and therefore will not reverse his judgment in overruling the commissioners' demurrer to the petition; and we affirm his judgment in overruling the sheriff's demurrer to the commissioners' answer, and in denying, at the hearing under the agreed statement of facts, the grant of a mandamus absolute.

*Judgment affirmed on both bills of exceptions. All the Justices concur, except Bell, C. J., and Duckworth, J., who dissent.*

DUCKWORTH, Justice, dissenting. While it is true that the amendment to the constitution dealing with the subject of chief clerk, chief assistant, and chief deputy is permissive, in that it provides that the legislature may by proper enactment create such offices, yet by its express terms it becomes imperative once the legislature has acted thereunder. It contains an unqualified stipulation fixing the duration of the term of the chief deputy and declares that "the term in no event to extend beyond the term of the person making the appointment." I submit that this plain language of the constitution means that so long as it remains a part of the constitution there is nothing that can be done by legislative enactment or even by constitutional amendment that would have the effect of legally extending the term as thus fixed. When this proper

recognition is given to the quoted language, it becomes unnecessary to debate the meaning of the word "person" in the clause of the amendment wherein it is provided that, when a vacancy occurs in the offices there named, such designated chief clerk, chief assistant, or chief deputy may fill out the unexpired term of the person making the appointment; for it is obvious that, if such chief deputy can in no event continue in such office beyond the term of the person appointing him, it necessarily follows that he is therein authorized to fill out the unexpired term of the officer appointing him and is not authorized to fill out the unexpired term of any other officer. This inescapable logic, added to the unambiguous language of the constitution, it seems to me, compels the conclusion that in the present case Grimes was authorized to fill out the unexpired term of the sheriff who appointed him, but was not authorized to fill out the unexpired term of the present sheriff or any future sheriff except upon a new appointment as chief deputy, since neither can be the officer that appointed Grimes as chief deputy as provided in the constitution. If it be said that in adopting the civil-service amendment the legislature and the people had in mind the simultaneous chief-deputy amendment, and hence referred to the office of chief deputy as therein created, the reply is that the legislature and the people at the time of the adoption of the chief-deputy amendment had in mind and contemplation the simultaneous civil-service amendment. If this be true, why employ the unqualified expression, "the term in no event to extend beyond the term of the person making the appointment?" Rather would they not, in lieu of this unqualified expression, have declared that in no event except in the event of the adoption of the civil-service amendment should such term be extended? Furthermore, the construction as adopted by the majority opinion would defeat the evident intention of the amendments that a special election be avoided.

In seeking a correct construction of the two constitutional amendments here involved it must first be recognized that they have been ratified at the same time, are of equal dignity, and neither is superior to the other; and no court is justified in nullifying any portion of the one in order to give effect to the other. It must be admitted that, until the chief-deputy amendment had been ratified and the legislature acted thereunder, there existed in Fulton County no such office with a fixed term as that of chief clerk, chief assistant,

or chief deputy. These offices were brought into existence for the first time by the amendment and the statute enacted thereunder. The civil-service amendment was ratified at the same time, and hence there was in law and in fact no such office in existence as that of chief deputy sheriff with a fixed term when the civil-service amendment was written or when the same was ratified and made a part of the constitution. This inescapable fact excludes all thought or theory that in any of its provisions the civil-service amendment embraced, intended to embrace, or in fact could have embraced, the office of chief deputy sheriff, which is the office here in dispute. Certainly it would be a violent and reckless speculation to assume or to hold that the legislature, in writing it, or the people, in ratifying it, intended by the civil-service amendment to regulate and control an office that had not even existed at the time of its adoption. When this simple and undebatable fact is recognized, as it must be, then one encounters no difficulty in concluding that the civil-service amendment means what it says and means no more than it says when it names as the employees intended to be covered thereby such employees as were in existence at the time of its adoption, to wit, clerks, assistants, and deputies. These had no terms fixed by law, and the way was clear for their terms to be fixed by the civil-service amendment. The chief-deputy amendment expressly limits its operation to the creation of chief clerks, chief assistants, and chief deputies, fixes their terms, and provides that in cases of vacancies they may qualify and fill out the unexpired terms of the persons appointing them. It makes no attempt to deal with any other employees. It makes no reference to the regulation and control as to the tenure in service of the various clerks and assistants of the county officers named. These observations, it would seem to me, are sufficient to compel the conclusion that the two amendments deal with distinctly different classes of employees, and that neither intended to embrace the class dealt with in the other. The two, having been ratified simultaneously, stand on the same basis as if they had constituted a single amendment in which the provisions of the two amendments were contained. In that event, it is inconceivable that a construction could be upheld which holds that with one paragraph treating of the subject of creating chief clerks, chief assistants, or chief deputies, yet it was the intention of both the legislature and the people in adopting the same

that a portion of such paragraph be nullified and destroyed by the provision of the next paragraph wherein clerks, assistants, and deputies are put under civil service. The majority opinion announces a number of sound rules of law applicable in the present case, to all of which I agree, but my dissent is necessary because in my opinion the majority, after recognizing such rules, proceeds forthwith to utterly destroy them. To illustrate: The majority recognizes the rule that the two constitutional amendments, having been simultaneously adopted, are of equal dignity, and that it is the duty of the courts to give them such construction, if their language will permit, as will avoid a conflict. Another rule recognized is that, if there is conflict in the two amendments, the courts have no right to give effect to one when by so doing it destroys any part of the other. After recognizing the first rule, the majority opinion proceeds at once to write into the civil-service amendment words and meaning by interpretation which are not contained in the amendment. Thus, instead of avoiding a conflict as the law demands, that opinion creates a conflict where otherwise none would exist. Then, although recognizing the second rule, the majority give full effect to the strained and erroneous construction of the meaning of the civil-service amendment, and in doing so utterly destroys the very heart and substance of the other amendment. No multiplicity of words can avoid or even dim the fact that, under the majority opinion, the provision of the chief clerk, chief assistant, and chief-deputy amendment, that the term of such chief may be fixed in the discretion of the officer appointing him "but in no event" to extend beyond the term of the officer appointing him, and the provision that such chief clerk, chief assistant, or chief deputy, in the event of a vacancy, may fill out the unexpired term of the person appointing him, are by that opinion nullified and utterly destroyed. Thus, the majority opinion, which violates all applicable rules of construction, destroys the very heart and substance of the provision of the constitution, and it does this on no higher authority and with no better justification than another provision of the same constitution which is by interpretation given a meaning never intended, and unjustified by the very language of the amendment itself.

I have not discussed either of the two enabling acts of the legislature for the simple reason that no court of this State, so far as I

have been able to learn, has until now held any act of the legislature to be superior to and controlling over a conflicting provision of the constitution. I certainly do not agree with the majority wherein they seek to write into the chief-deputy amendment a meaning clearly irreconcilable with the plain language of the amendment, and cite in support of such ruling a provision of the enabling act thereunder which the majority assert amounts to a legislative interpretation. If the judiciary is to abdicate to the General Assembly its constitutional duty of construing the constitution and laws enacted thereunder, then the court will no longer be of service to the State.

ON MOTION FOR REHEARING.

The only contention made in the motion for rehearing which the opinion has not attempted to fully deal with is one which is now submitted and argued at full length, but which is presented for the first time in the motion for rehearing, or, if suggested at all in the original briefs, must be taken as having been referred to only in the plaintiff's mere general statement as to which of the appointees was legally entitled to the office, that Grimes's appointment not having been made by Foster, the present sheriff, he is without title thereto. The point now insisted on is that the chief-deputy constitutional amendment and statute have two beneficent purposes: one to provide for the office of a chief deputy in the various county offices of Fulton County; the other to provide that such chief deputy would, in the event of a vacancy arising in the office in which he was acting as chief deputy, and without the trouble and expense of holding a special election, succeed to such office for the unexpired term. It is contended that the majority opinion nullifies the second of such purposes, for the reason that Grimes as chief deputy could not now or in the future again succeed to the office of sheriff, since under the chief-deputy amendment and statute only a chief deputy who has been appointed by the particular individual whose death or resignation causes a vacancy to arise can succeed to and fill such vacancy. The movant, in support of this new and ingenious argument, quotes and underscores portions of the constitutional amendment and statute, which he says "we definitely charge" that the court in the majority opinion overlooked. These excerpts from the amendment and statute are as follows: "Section 1. That the constitution of the State of

Georgia is hereby amended as follows, to wit: By adding a new paragraph to section III, of article XI of said constitution, said new paragraph to follow paragraph I and to be known as paragraph II and to be in the following words and symbols, to wit: Paragraph II. The General Assembly may provide, however, that the ordinary, *sheriff,* clerk superior court, tax receiver, tax collector (or tax commissioner, as the case may be, and county treasurer, any one or all of them, serving in Fulton County, *shall be required to appoint a chief clerk, chief assistant or chief deputy, from among such officer's assistants; the appointment to be made by the person occupying such respective office* and to be for such term as the person making the appointment may designate, the term in no event to extend beyond the term of the person making the appointment; and the General Assembly may provide, further, that in said County of Fulton in the event a vacancy occurs in any of the offices here named, that *such designated chief clerk, chief assistant or chief deputy* may fill out *the unexpired term of the person making the appointment,* upon qualifying for such office as provided by law." Ga. L. 1939, p. 34. "Section 5. Be it further enacted by the authority aforesaid, that from and after the passage of this act whenever any vacancy occurs in any of the offices in Fulton County named in the preceding sections, to wit: the office of ordinary, sheriff, clerk superior court, tax receiver, tax collector, and county treasurer, *the person designated by said respective officers* as chief clerk, or chief assistant, or chief deputy, as the case may be, shall upon qualifying for such office as provided by law, *fill the unexpired term of such* ordinary, *sheriff,* clerk superior court, tax receiver, tax collector, or county treasurer, as the case may be." Ga. L. 1939, p. 568.

The question which movant has interjected as an argument to be considered in a proper interpretation of the constitutional amendment and the statute is not the question now before the court; and therefore, without making an actual ruling thereon, we will give consideration to it only in the way in which the movant does, that is, as throwing possible light upon the reasonable and natural construction of the amendment and statute. To begin with, this constitutional amendment and statute do no deal merely with the appointment of a chief deputy in the sheriff's office, but provide for the appointment of a chief deputy, chief clerk, or chief

assistant (according to how the help might be variously designated), in the office of sheriff, clerk of the superior court, tax receiver, tax collector, and county treasurer. The caption and the body of the amendment both provide that the sheriff, clerk of the superior court, etc., shall make the respective appointments of their chief deputy, assistant, etc. The appointments are thus to be made, not as personal perquisites attached to the office, but by the sheriff, etc., acting as such. It is true that, just as a corporation can function only through persons as officers, so a public office can function only through some person as the incumbent. Naturally, the amendment and the statute would use some appropriate language to make clear that, upon a vacancy arising in any one of the five designated county offices, it would be the chief deputy, chief clerk, or chief assistant, as the case might be in that particular office, who would succeed thereto. Accordingly, the amendment to the constitution authorized the legislature to provide that each of these county officers (naming them) should be required to appoint a chief clerk, deputy, or assistant; and that, in the event a vacancy occurred *in any of said offices,* the person so named should fill "the unexpired term of the person making the appointment." It would hardly have been in order for the amendment to have left open the interpretation that, upon the death for example of the ordinary, his place would be filled by the chief deputy sheriff. Courts give due deference to legislative construction of constitutional provisions. The same legislature that provided for the submission of the chief-deputy constitutional amendment passed at the same session the anticipatory statute putting the amendment into operation in the event that it should be adopted by the people. This statute, with manifestly the same idea in mind, used language a little different, providing that "the person designated by said respective *officers*" (not persons) should fill out the unexpired term "as the case may be." Where the natural and reasonable meaning of a constitutional provision is clear and capable of a "natural and reasonable construction" (*Rayle Electric Membership Corp.* v. *Cook,* 195 *Ga.* 734 (2), 25 S. E. 2d, 574), courts are not authorized either to read into or to read out that which would add to or change its meaning. What the constitutional provision was here plainly attempting to make clear was that, in the event of a vacancy in any one of the five county offices, the chief helper (by

whatever name) of that particular office should succeed to the vacancy. It would seem, not to be reading something out of the amendment, but to be reading something into it, should we torture the language thus manifestly and naturally employed for a plain and necessary purpose, in order to go far afield and set up strained limitations upon the right of such a chief deputy to completely function as such so long as he continues in office.

As we see it, the original tenure of the chief deputy having been extended by the general assembly in the one and only way possible, to wit, under authority of a constitutional amendment authorizing it to put such officer under civil service, and in so doing to fix his tenure of office, there is nothing expressed nor anything to be inferred in the chief-deputy amendment which by any natural or reasonable interpretation could prevent the chief deputy, whoever he might be, from completely functioning as such.

*Rehearing denied. Jenkins, P. J., Atkinson and Wyatt, JJ., concur. Bell, C. J., and Duckworth, J., dissent.*