28034. ROBERTS v. LIPSON.

UNDERCOFLER, Justice. The issue here is whether a Georgia taxpayer is required to pay intangible tax for the year 1970 on the stock of an undomesticated foreign corporation which has qualified to do business in Georgia. The trial court entered judgment for the taxpayer. The Fulton County Tax Commissioner appeals. *Held:*

The corporation qualified to do business in Georgia in 1955 as an undomesticated foreign corporation as was then required by Ga. L. 1946, p. 687 (Code Ann. § 22-1506). At that time it could have elected, but was not required, to become a domesticated foreign corporation. Code Ann. § 22-1601. A domesticated foreign corporation and the stockholders thereof are entitled to the same powers, privileges and immunities as domestic corporations. Code Ann. § 22-1601 (Ga. L. 1952, pp. 282, 285); Code Ann. § 22-1420 (Ga. L. 1968, pp. 565, 722). The stock of domestic corporations is exempt from intangible tax provided the

corporation pays all taxes due in Georgia. Code Ann. §§ 92-131, 92-162 (Ga. L. 1937-38, Ex. Sess. pp. 156, 163; Ga. L. 1953, Nov. Sess. pp. 379, 382).

In *Head v. Rich,* 190 Ga. 680, 682 (10 SE2d 183), it was stated, "there is no obscurity as to the intent and purpose of the General Assembly," and that case held that the stock of domesticated foreign corporations was exempt from intangible tax provided it had paid all taxes due in Georgia. It further held that the parties had stipulated that all taxes due in Georgia by the corporation there involved had been paid. The year following that decision, the General Assembly placed certain additional taxes upon domesticated foreign corporations. Ga. L. 1941, pp. 223, 224 (Code Ann. § 92-117.2).

Until 1968 the stock of an undomesticated foreign corporation qualified to do business in Georgia was not exempt from intangible tax. In 1968 Georgia enacted the Georgia Business Corporation Code. Code Ann. Title 22 (Ga. L. 1968, p. 565). It was a comprehensive revision of the Georgia law of corporations. It eliminated the provisions for domestication of foreign corporations but preserved the status of those foreign corporations which had theretofore been domesticated and continued in effect the existing intangible tax exemption of their stock. Code Ann. § 22-1420.

It also provided that those undomesticated foreign corporations which had theretofore qualified to do business in Georgia under Georgia Laws 1946, p. 687 (Code Ann. § 22-1506) would not be required to requalify under the 1968 Georgia Business Corporation Code but would be entitled to "all the rights and privileges applicable to foreign corporations procuring certificates of authority" under such Act. Code Ann. § 22-1419 (Ga. L. 1968, pp. 565, 721; 1969, pp. 152, 198). As previously stated, the corporation here had qualified in 1955 under the 1946 Act.

The 1968 Georgia Business Corporation Code further provided, "A foreign corporation which shall have received a certificate of authority under this Code shall . . . enjoy the same, but no greater rights and privileges as a domestic corporation. . ." Code Ann. § 22-1402 (Ga. L. 1968, pp. 565, 709).

The question presented to this court is whether this grant of "rights and privileges" to such foreign corporations qualified to do business in this state includes the exemption of their stock from the Georgia intangible tax?

In 173 ALR 220, § 119, it is said: "A problem which has perplexed the courts, and in the solution of which there is a conflict in the decisions not easily reconcilable in principle notwithstanding factual variations, is one which arises where a corporation is granted all the 'powers and privileges,' 'powers, rights and privileges,' 'rights and privileges,' 'privileges and franchises' (or similar expression relating to acquisition of 'privileges') of another corporation which possessed a contract of tax exemption, and it is contended that the succeeding corporation secures the contract. As the Federal Supreme Court has frankly admitted on more than one occasion, the question admits of 'some doubt,' since its own decisions are not easy to be reconciled. That court has also frequently pointed out, however, that the trend of the later decisions is to deny that a contract of tax exemption passes to a corporation which is thus given 'privileges' of another which had an exemption contract.

"In Rochester R. Co. v. Rochester, 205 U. S. 236 (27 SC 469, 51 LE 784) (affg. 182 N.Y. 99 (74 NE 953, 70 LRA 773) which revd. 98 App Div 521 (91 NYS 87)), the Federal Supreme Court reviewed some of the earlier cases decided in that court in which it had been held that the word 'privileges' was sufficiently broad to embrace within its meaning an exemption, and that, when it was added to other words, legislative intent to transfer the exemption was clearly manifest. Among the cases so reviewed were Humphrey v. Pegues, 16 Wall 244 (21 LE 326); Southwestern R. Co. v. Georgia, 92 U. S. 676, note (23 LE 762); Chesapeake & O. R. Co. v. Virginia, 94 U. S. 718 (24 LE 310); and Tennessee v. Whitworth, 117 U. S. 139 (6 SC 649, 29 LE 833). The court pointed out that if the authority of these four cases, supported by some dicta which did not need to be cited, remained unimpaired, it would justify the opinion that a legislative transfer of the 'privileges' of a corporation included an exemption from the taxing or other governmental power granted by a contract with the state. But the court held that other and later cases had essentially modified the rule which might be deduced from those four cases, and referred to the cases of Chesapeake & O. R. Co. v. Miller, 114 U. S. 176 (5 SC 813, 29 LE 121); Picard v. East Tennessee, V. & G. R. Co., 130 U. S. 637 (9 SC 640, 32 LE 1051); Wilmington & W. R. Co. v. Alsbrook, 146 U. S. 279 (13 SC 72, 36 LE 972); Keokuk & W. R. Co. v. Missouri, 152 U. S. 301 (14 SC 592, 38 LE 450); Phoenix F. & M. Ins. Co. v. Tennessee, 161 U. S. 174 (16 SC 471, 40 LE 660); and Gulf & S. I. R. Co. v. Hewes,

183 U. S. 66, (22 SC 26, 46 LE 86). In the light of these later cases the court stated that it was now the rule, notwithstanding earlier decisions and dicta to the contrary, that a statute authorizing or directing the grant or transfer of the 'privileges' of a corporation which enjoyed immunity from taxation or regulation should not be interpreted as including that immunity."

We believe the reasoning of this text is sound and should be applied in this case.

In *Head v. Rich,* 190 Ga. 680, supra, the statute under construction granted a domesticated foreign corporation the "rights, privileges and immunities" of domestic corporations. In holding that the stock of domesticated foreign corporations was exempt from intangible taxation in Georgia, this court placed emphasis on the word "immunity." The statute involved in this case only grants "rights and privileges" but does not give foreign corporations the "immunity" of domestic corporations.

It is well established in this state that exemptions from taxation must be strictly construed, "and the exemption will not be held to be conferred unless the terms under which it is granted clearly and distinctly show that such was the intention of the Legislature." *Mayor &c. of Macon v. Central R. & Bkg. Co.,* 50 Ga. 620 (1); *Cherokee Brick &c. Co. v. Redwine,* 209 Ga. 691 (1) (75 SE2d 550) and cits.

Under the law as it existed when the Georgia Business Corporation Code was adopted, we are convinced and we hold that the General Assembly did not intend to grant to undomesticated foreign corporations which qualified to do business in Georgia an exemption of their stock from intangible tax.

*Judgment reversed. All the Justices concur.*

Argued July 11, 1973 — Decided September 6, 1973 — Rehearing denied October 4, 1973.

*Martin H. Peabody, Alston, Miller & Gaines,* for appellant.

*Powell, Goldstein, Frazer & Murphy, Elliott Goldstein, William L. Kinzer, Walter E. Moeling, IV,* for appellee.

*Arthur K. Bolton, Attorney General, Richard L. Chambers, H. Perry Michael, Assistant Attorneys General,* amicus curiae.