73017. GEORGE C. CARROLL CONSTRUCTION COMPANY, INC. v. LANGFORD CONSTRUCTION COMPANY.
(355 SE2d 756)

BEASLEY, Judge.

Carroll appeals from the grant of Langford's motion for summary judgment as to counts one and two of Carroll's four-count complaint. Carroll is an Alabama contractor who subcontracted with Langford on two construction projects in Troup County. Count one alleged performance under one contract and sought recovery of labor and materials expended. Count two alleged readiness to perform on the other

contract but non-utilization by Langford; damages for lost profits were demanded.

Both by answer and motion, Langford asserted that Carroll had no right of access to Georgia courts because it was a nonresident contractor which had failed to comply with the bond requirements of OCGA § 48-13-32. An affidavit established that the construction contracts involved sums in excess of $10,000.

In opposition, Carroll's affidavit stated that it had complied with the tax and license laws of Georgia and had been audited several times by the state. It was also shown that Carroll had received a certificate of authority from the Secretary of State to transact business in Georgia pursuant to OCGA § 14-2-310 et seq. Further, Carroll had a registered agent and a registered office in this state.

The trial court concluded that, since both agreements involved consideration exceeding $10,000 and Carroll did not file a bond with the state Revenue Commissioner as required by OCGA § 48-13-32, Carroll had no access rights to the Georgia courts. OCGA § 48-13-37. Partial summary judgment was granted and counts one and two were dismissed.

Under OCGA § 48-13-30 et seq. a nonresident contractor as defined (OCGA § 48-13-30), who desires to engage in the contracting business in Georgia, must register with the Revenue Commissioner when the total contract price or compensation to be received amounts to more than $10,000 (OCGA § 48-13-31), and before contracting must execute a bond (OCGA § 48-13-32). One who fails to register or comply with any provision of the article forfeits the right to maintain an action to recover on the contract. OCGA § 48-13-37.

Carroll contends it should not be considered a nonresident contractor because of its activities in this state and because it obtained a certificate of authority. OCGA § 14-2-311 provides that a foreign corporation with a certificate of authority shall enjoy the same rights and privileges and be subject to the same duties, restrictions, etc., as a domestic corporation. Carroll urges that compliance with OCGA § 14-2-310 et seq. took it out of OCGA § 48-13-30 et seq., and in effect that the former controls the latter. Carroll contends further that its activities and conduct in the state were such that at least a jury question was presented as to its status.

OCGA § 14-2-311 does not serve to domesticate a foreign corporation. It merely gives the foreign corporation an equal status generally, but a foreign corporation with a certificate of authority is not entirely equivalent to a domestic corporation. For one thing, the legislative grant of "rights and privileges" to a foreign corporation does not include immunity from taxation or regulation as enjoyed by domestic corporations. *Roberts v. Lipson*, 231 Ga. 142 (200 SE2d 722) (1973). Statutory construction was undertaken in *Image Mills v.*

*Vora*, 146 Ga. App. 196, 197 (1) (245 SE2d 882) (1978): "[a] foreign corporation cannot lawfully transact business in Georgia without registering in accordance with Code Ann. § 22-1401, and, if mere registering meant that a corporation thereby became a Georgia resident for Code § 8-108 purposes, then that Code section would be rendered virtually meaningless, as no foreign corporation transacting business within Georgia could be a "nonresident" thereunder. Therefore, contrary to appellant's assertion, construction of the two statutes shows that a foreign corporation does not necessarily shed its Code § 8-108 nonresidence by transacting business within Georgia."

"The cardinal rule in the construction of legislative enactments is to ascertain the true intention of the General Assembly in the passage of the law. *Gazan v. Heery*, 183 Ga. 30 (187 SE 371, 106 ALR 498). All statutes are presumed to be enacted by the General Assembly with full knowledge of the existing condition of the law and with reference to it, and are therefore to be construed in connection and in harmony with the existing law." *Plantation Pipe Line Co. v. City of Bremen*, 227 Ga. 1, 9 (3) (178 SE2d 868) (1970). When construing two statutes involving possibly conflicting provisions pre-eminence is granted to the latter in time as providing the latest expression of legislative intent. *Tomblin v. S. S. Kresge*, 132 Ga. App. 212, 216 (6) (207 SE2d 693) (1974); *Foster v. Brown*, 199 Ga. 444, 451 (34 SE2d 530) (1945). "For purposes of interpretation, and to the extent of any repugnancy between them, the specific statute will prevail over the general statute, absent any indication of a contrary legislative intent." *First Nat. Bank v. Sinkler*, 170 Ga. App. 668, 670 (1) (317 SE2d 897) (1984). We apply these principles to the two statutes in their historical perspective.

When the nonresident contractor statute was enacted in 1961, it specifically excluded corporations authorized to do business in Georgia from its registration requirements. Ga. L. 1961, p. 480. During that time the predecessor to OCGA § 14-2-310, Code § 22-1601 (Ga. Corp. Code of 1933) provided for domestication of foreign corporations which would then have the same powers and privileges as Georgia corporations. In 1968 the corporate code was completely revised by enactment of the Ga. Business Corp. Code. This was the genesis of the present language of OCGA § 14-2-310 (a): "No foreign corporation shall have the right to transact business in this state until it shall have procured a certificate of authority to do so from the Secretary of State, except that when another statute of this state requires foreign corporations of a particular class to qualify thereunder to transact business in this state the requirements of such other statute shall govern."

In 1972 the nonresident contractor act was amended to delete the provision that "a foreign corporation authorized to do business in the

state shall not be required to register" under the act's provisions.

*Thompson v. Ga. Power Co.*, 73 Ga. App. 587, 596 (37 SE2d 622) (1946) enunciated the principle that a "revising statute is in effect a legislative declaration that whatever is embraced in the new statute shall prevail, and whatever is excluded therefrom shall be discarded." Clearly since 1972, a nonresident contractor is required to register in order to maintain an action to recover payment for performance of a contract in the courts of this state. No other interpretation is viable. The language is clear as is the express intent of the legislature, resulting in a harmonious application of the two code sections.

Had there been any conflict in the laws, the 1972 act would control as the last expression of the legislative will and because it is specifically oriented and directed to the exact issue. Since OCGA § 48-13-30 et seq. is applicable as a matter of law, the trial court properly granted defendant's motion for summary judgment as to counts one and two.

*Judgment affirmed. Birdsong, C. J., McMurray, P. J., Carley and Sognier, JJ., concur. Banke, P. J., concurs in the judgment only. Deen, P. J., Pope and Benham, JJ., dissent.*

BENHAM, Judge, dissenting.

I am unable to agree with the harsh results obtained from the ruling of the majority that, as a matter of law, every contractor which is a foreign corporation that fails to file a bond with the State Revenue Commissioner as required by OCGA § 48-13-32 is thereby denied access rights to the Georgia courts under OCGA § 48-13-37. In my view, the statutory scheme, as well as the cases interpreting these laws, contemplates that when such a foreign corporation obtains the status of a resident contractor it acquires the same rights and privileges as a Georgia corporation, and that whether it has done so is a question of fact to be determined by a jury.

OCGA § 14-2-310 (a) recites in pertinent part: "No foreign corporation shall have the right to transact business in this state until it shall have procured a certificate of authority to do so from the Secretary of State. . . . Any foreign corporation to which a certificate of authority is granted shall be subject to all the licensing and regulatory statutes of this state relating to businesses of the kind which the foreign corporation proposes to transact in this state." OCGA § 14-2-311 provides that until withdrawn or revoked, once a certificate of authority is issued the foreign corporation shall "enjoy the same, but no greater, rights and privileges as a domestic corporation . . . and, except as otherwise provided in this chapter, shall be subject to the same duties, restrictions, penalties and liabilities now or hereafter imposed upon a domestic corporation of like character."

While this court held in *Image Mills v. Vora*, 146 Ga. App. 196

(1) (245 SE2d 882) (1978), that mere registration in compliance with OCGA § 14-2-310 does not mean that a foreign corporation necessarily sheds its nonresident status, that holding does not dictate that it cannot do so. Here, in addition to obtaining a certificate of authority from the Secretary of State, the appellant, at all times pertinent, maintained a registered office and a business office in Columbus, Georgia, and obtained a business license in LaGrange, Georgia. The affidavit of appellant's president showed that he had filed all state tax and withholding tax returns and reports for the years in question and acquired all the necessary state business and vehicle licenses; in addition the State Department of Revenue conducted an audit of appellant's records, including a review of all taxes it paid in Georgia, for the years 1981 through 10-½ months of 1985.

The Supreme Court stated in *Gorrell v. Fowler*, 248 Ga. 801, 803 (5) (286 SE2d 13) (1982) (appeal dismissed, 457 U. S. 1113 (102 SC 2918, 73 LE2d 1324) (1982)), that the Nonresident Contractors Act (OCGA § 48-13-30 et seq.) "is not designed to discriminate *against* non-resident contractors, but to bring them into a parity with resident contractors relative to the compliance with an important obligation under the Georgia Employment Security Law." The brief of the State Revenue Commissioner filed as an amicus curiae in this case also makes it clear that the purpose of OCGA § 48-13-32 in imposing the bond requirement upon nonresident contractors in contracts over $10,000 is to alleviate the "tremendous audit and enforcement problems" due to the large amounts of revenue generated by this industry in Georgia. However, the question in the instant case is whether appellant could be considered a resident within the meaning of the Georgia Business Corporation Code (OCGA § 14-2-1 et seq.) and the Nonresident Contractors Act so as to have the statutory right to bring an action to recover under its contracts.

As I view these statutes, the bond requirement is a condition precedent to the filing of a suit to recover payment for the performance of a contract only when a factual determination of nonresidency has been made. See *Gorrell v. Fowler*, supra at 802; *American Hosp. Supply v. Starline Mfg. Corp.*, 171 Ga. App. 790 (2) (320 SE2d 857) (1984). "Although the definition of 'corporation' [in OCGA § 14-2-1] excludes 'foreign corporations,' it does not expressly exclude foreign corporations authorized by certificate to transact business in Georgia. Nor does the definition of 'foreign corporations' expressly include those which are certificated." *Miller & Meier & Assoc. v. Diedrich*, 174 Ga. App. 249, 251 (329 SE2d 918) (1985); reversed in part on other grounds sub nom. *Diedrich v. Miller & Meier & Assoc.*, 254 Ga. 734 (334 SE2d 308) (1985). Likewise, while OCGA § 48-13-30 defines the term "contractor," it does not distinguish between a resident and nonresident contractor. OCGA § 14-2-331 (b) prohibits access to the

courts of this state only if a certificate of authority is *not* obtained, and subsection (c) makes the contracts of a foreign corporation which does not obtain a certificate voidable at the instance of any other party to the contract. OCGA § 48-13-35 further contemplates that a nonresident contractor would be unlikely to establish an office within the state since it requires a nonresident contractor to appoint the Secretary of State as agent for service of process.

There was uncontradicted evidence in this case that appellant had submitted itself to the jurisdiction of this state and complied with all the applicable statutes to achieve the status of a domestic corporation or resident contractor. Moreover, appellant showed that it had duly paid all state and local taxes and license fees, thereby posing no risk of loss of revenue which would require the posting of a nonresidence bond. There being no explicit statutory definition of what a nonresident contractor is, in my opinion the motion for partial summary judgment should have been denied and the issue as to whether appellant was a nonresident contractor or a resident contractor with standing to sue should have been submitted to the jury. Accordingly, I respectfully dissent.

I am authorized to state that Presiding Judge Deen and Judge Pope join in this dissent.

DECIDED MARCH 19, 1987.

*J. Philip Day*, for appellant.
*Timothy S. Minors*, for appellee.
*Michael J. Bowers, Attorney General, H. Perry Michael, First Assistant Attorney General, Verley J. Spivey, David A. Runnion, Senior Assistant Attorneys General*, amicus curiae.