**DAVIS CONSTRUCTORS, Plaintiff,**

v.

**DARTCO MANUFACTURING, INC., Defendant.**

**Civ. A. No. 87–133–JRR.**

United States District Court, D. Delaware.

Sept. 2, 1987.

---

Stuart B. Young, of Young, Conaway, Stargatt & Taylor, Wilmington, Del. and Brian G. Corgan, and David A. Dial, of Smith, Currie & Hancock, Atlanta, Ga., for plaintiff.

Richard D. Allen, and Michael Houghton, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. and Ralph B. Levy, F.R. Josh Stone, and S. Samuel Griffin, of King & Spalding, Atlanta, Ga., for defendant.

## OPINION

ROTH, District Judge.

This is a breach of contract action filed by Davis Constructors, a division of Davis Electrical Constructors, Inc. (Davis) against defendant Dartco Manufacturing, Inc. (Dartco). The action arises out of the construction of a monomer chemical facility in Augusta, Georgia in which Davis contracted with Dartco to perform the process mechanical and piping construction work for the facility. Davis originally filed an action against Dartco in the United States District Court for the Southern District of Georgia, Augusta Division, but the parties agreed to dismiss that action without prejudice. Davis refiled its complaint in Delaware, not Georgia, and Dartco has moved to have the action transferred back to the Southern District of Georgia. It is that motion that we consider in this Opinion.

## I. BACKGROUND.

Davis is a South Carolina corporation with its principal place of business located in Greenville, South Carolina. Dartco is a Delaware corporation with its principal place of business in Augusta, Georgia.

Davis apparently conducts no business in the State of Delaware while Dartco's business activities in Delaware are limited to isolated sales transactions and its status as a Delaware corporation.

The monomer production facility at issue in this case is located in Augusta, Georgia. The construction work performed by Davis under the contract was performed in Augusta, and the contract provided that it was to be governed by Georgia law. Many of the Davis employees involved in the construction of the facility are residents of Georgia while the remainder are residents of South Carolina. Augusta is located approximately 100 miles from Greenville, South Carolina, the home office of plaintiff Davis. Lockwood Greene, the project architect, and other potential non-party witnesses are located in Georgia, within the subpoena jurisdiction of the Georgia District Court. There are no known witnesses, party or non-party, who are located in Delaware.

On August 12, 1986, Davis filed an action against Dartco in the Southern District of Georgia.[1] The allegations contained in the complaint filed in Georgia are virtually identical to those contained in the complaint filed in this action. Dartco denied liability and filed a counterclaim in both actions. Because the parties were having trouble completing discovery in the first action, they agreed by stipulation to dismiss the Georgia action without prejudice, to continue discovery informally and to allow Davis to refile the action at a later date.

Counsel for Davis also learned that Davis had not filed with the Revenue Commissioner of the State of Georgia the bond required by Georgia statute O.C.G.A. § 48–13–30 *et seq.* This statute provides that a nonresident contractor, who wishes to engage in the contracting business in Georgia, must, when the total contract price is over $10,000, register with the Revenue Commissioner and execute a bond prior to beginning any work on the project. The statute also provides that "[n]o contractor

---

**1.** *Davis Constructors v. Dartco Mfg. Co., Inc.,* No. CV186–152 (S.D.Ga. August 12, 1986).

who fails to ... comply with any provision of this article shall be entitled to maintain an action to recover payment for performance on the contract in the courts of this state." O.C.G.A. § 48–13–37.

The scarcity of case law interpreting this statute apparently made Davis unsure about its ability to maintain a lawsuit in Georgia, even after it attempted to cure its non-compliance by filing the bond late, when the work on the facility was almost complete. Therefore, Davis chose to refile its action in Delaware rather than Georgia.[2] Dartco feels that it was duped into agreeing to dismiss the Georgia action without prejudice so that Davis could refile its action in Delaware. As a result, Dartco filed this motion to transfer venue to the Southern District of Georgia, Augusta Division, where the action was originally filed.

## II. DISCUSSION.

Dartco's motion to transfer venue is made pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The statute outlines a two prong test which must be satisfied before a transfer may be ordered. First, it must be established that the action "might have been brought" in the transferee district. In order for this action to have been brought in Augusta, there must be no real question as to whether both venue and personal jurisdiction would be obtainable in the Southern District of Georgia. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24–25 (3d Cir.1970), *cert. denied* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Second, the Court must determine whether the convenience of the parties and witnesses and the interests of justice would be served by a transfer of venue.

### A. Ability To Bring Action In Georgia.

Davis claims that there is a "real question" as to whether it could bring this action in Georgia, in spite of already having brought it there once, because of the uncertainty surrounding the Georgia bond statute, O.C.G.A. § 48–13–30, *et seq.* The Georgia code provisions at issue here constitute a portion of the Georgia revenue and taxation laws. The general purpose of these provisions is to ensure the payment by nonresident contractors of state unemployment taxes. *Gorrell v. Fowler*, 248 Ga. 801, 286 S.E.2d 13 (1982), *appeal dismissed*, 457 U.S. 1113, 102 S.Ct. 2918, 73 L.Ed.2d 1324 (1982).

Davis originally failed to comply with this statute when it did not file the necessary bond with the Revenue Commissioner before starting work on the chemical facility in Augusta. *See* O.C.G.A. § 48–13–32(a), (b). However, Davis has since filed the bond, the bond was on file when this action in Delaware was commenced, and that bond remains on file in Georgia at this time.

One issue, concerning Davis's ability to file in Georgia, is whether Davis's subsequent filing of the bond cures its original failure to comply, thereby eliminating any "real question" as to Davis's ability to bring the action in Georgia. A second issue which may obviate the need to decide the first one, is whether compliance with the bond statute is jurisdictional or whether it is a defense which Dartco may waive or agree not to raise in the event of a transfer back to Georgia. Neither issue was raised by Dartco or the court in the original action in Georgia. Moreover, the specific issue of a nonresident contractor's ability to cure the bond requirement has never, to our knowledge, been addressed by either the Georgia state courts or a

---

**2.** Davis contends that it chose Delaware because Dartco was a Delaware corporation and had admitted in its answer filed in the Georgia action that its principal place of business was Wilmington, Delaware. It has since been dis-

covered that Dartco mistakenly failed to deny this allegation by Davis because Dartco's principal place of business is, in fact, Augusta, Georgia, not Wilmington, Delaware.

federal court interpreting the Georgia statute.

Dartco has made it absolutely clear that it is willing to stipulate not to attempt to raise the defense of Dartco's failure to file the bond should this action be transferred to Georgia. Such an offer convinces us that Dartco will not raise the issue in Georgia. Moreover, Dartco would likely be estopped from raising it as a defense since transfer was made into Georgia at Dartco's express request. *See A.S. International Corp. v. Salem Carpet Mills, Inc.*, 441 F.Supp. 125, 127 (N.D.Ga.1977).

In spite of Dartco's offer to stipulate and any equitable estoppel effect, Davis still claims that the bond statute creates a "real question" about Davis's ability to bring the action in Georgia because compliance with the statute is jurisdictional and is not a defense which may or may not be raised by defendants.

Dartco offers two decisions of the Georgia state courts to support this proposition. *See Gorrell*, 248 Ga. 801, 286 S.E.2d 13 (1982); *George C. Carroll Constr. Co., Inc. v. Langford Constr. Co.*, 182 Ga.App. 258, 355 S.E.2d 756 (1987). Both of these cases involve nonresident contractors that never filed the bond. The contractor in *Carroll* was an Alabama contractor that had obtained a certificate of authority in Georgia. Carroll claimed that the certificate of authority entitled it to the same rights as resident contractors, and, thus, they should not be required to file the bond. The court disagreed and dismissed the case for failure to comply with O.C.G.A. § 48–13–30 *et seq.*

The contractor in *Gorrell* had many weak arguments to explain its failure to comply with the bond statute and to dispute the statute's applicability to the plaintiff. The court rejected all of these arguments and dismissed the case because Gorrell had never filed the bond.

Neither *Gorrell* nor *Carroll* suggests that the provisions of the bond statute are jurisdictional. On the contrary, in both cases the failure of the plaintiff to file the bond was raised by defendants as a defense. Furthermore, in *Gorrell* the Su-preme Court of Georgia specifically referred to the defendant's claim for dismissal, based on plaintiff's failure to comply with the bond statute, as a *"defense [which] was properly raised"* at trial and was not included in the "limited number of *defenses* which must be pleaded specifically." 286 S.E.2d at 15 (emphasis added). Thus, the highest court in the State of Georgia has stated that the failure of a plaintiff contractor to comply with the bond statute is a defense. However, because the Georgia Supreme Court was not addressing the specific issue at hand in the present case, when it made those statements, we will also review court decisions on the analogous Georgia state nonresident corporate registration statute, Ga. Code Ann. § 22–1421, to determine whether a failure to comply with the similar registration provisions of the corporate registration statute can remove the subject matter jurisdiction of the court.

Section 22–1421 bars a foreign corporation from bringing an action in Georgia unless it has complied with the nonresident corporate registration requirements. The Northern District of Georgia has held that the failure of a foreign corporation to obtain the appropriate certification does not effect the Court's subject matter jurisdiction. *A.S. International*, 441 F.Supp. at 126–27. A claim that the action should be dismissed for failure to comply with the registration requirements of § 22–1421 is a defense which shall be raised by defendants. *Id.* The Fifth Circuit has also stated specifically that a failure to obtain a certificate of authority, under Ga.Code Ann. § 22–1421, does not deprive the district court of subject matter jurisdiction. *Morgan Guaranty Trust Co. of New York v. Blum*, 649 F.2d 342, 345 n. 4 (5th Cir.1981).

 The totality of the case law makes it clear to this Court that, under *Gorrell* and the federal law on the analogous Georgia foreign corporation registrate statute, a failure to file the bond at the outset or at any time during construction does not affect the subject matter jurisdiction of the Court. Thus, Dartco's offer of a stipulation is sufficient to remove

any question as to Davis's ability to bring the action in Georgia, regardless of whether the bond statute can or cannot be cured. Therefore, we find that this Court has the power to transfer this action and now must only consider whether to exercise its discretion under section 1404(a).

## B. Convenience Of The Parties And Witnesses.

■ On a motion to transfer, the plaintiff's choice of forum should be given considerable deference and should not be disturbed unless the balance of convenience strongly favors the defendant. *Shutte*, 431 F.2d at 25; *Sports Eye, Inc. v. Daily Racing Form, Inc.*, 565 F.Supp. 634, 637 (D.Del.1983). However, where the choice of forum is not the plaintiff's "home turf," the amount of "inconvenience to defendant needed to tip the balance in favor of transfer is concomitantly reduced." *Sports Eye*, 565 F.Supp. at 637 (quoting *Clopay Corp. v. Newell Companies, Inc.*, 527 F.Supp. 733, 736 (D.Del.1981) (quoting *General Instruments Corp. v. Mostek Corp.*, 417 F.Supp. 821, 822–823 (D.Del.1976)).

■ Since there has been no showing, nor even a suggestion, that Davis has any contacts with this district, Delaware is certainly not the "home turf" of Davis. Thus, although defendant still has the burden of demonstrating that the balance of convenience is strongly in defendant's favor, that burden is less onerous than it would otherwise be. However, the balance of convenience in this case weighs so heavily in favor of trying the case in Georgia that transfer would be appropriate under either standard.

Defendant Dartco, although a Delaware corporation, has many more contacts with Georgia than it has with Delaware. Dartco's principal place of business is in Georgia. Dartco's officers and employees work and reside in Georgia. A large portion of Dartco's other potential witnesses work and reside in Georgia. The construction, which is at the heart of the contractual dispute between the parties, was performed in Georgia. Furthermore, many non-party witnesses, including the project architect, Lockwood Greene, are located in Georgia.

Since the majority of defendant's employees and witnesses live and work in Georgia, they would undoubtedly find it far more convenient to participate in a trial held in Georgia than to travel all the way to Delaware.[3] However, the test for transfer is not simply that it be more convenient for defendant and defendant's witnesses. Transfer would not be granted if the burden of inconvenience were simply shifted to plaintiff. *Van Dusen v. Barrack*, 376 U.S. 612, 645–46, 84 S.Ct. 805, 823–24, 11 L.Ed.2d 945 (1964); *Sports Eye*, 565 F.Supp. at 638.

That is not what would happen in this case. Plaintiff Davis maintains its headquarters in Greenville, South Carolina, approximately 100 miles from Atlanta, Georgia. Most of the witnesses Davis would call at trial reside and work either in Georgia or neighboring South Carolina. While it may be true that Augusta, Georgia is not quite as convenient for plaintiff as it may be for defendant, it is still much closer to Davis's home offices in Greenville, South Carolina, and to those of Davis's witnesses, than is Wilmington, Delaware.

It can hardly be said, therefore, that a transfer to Georgia would merely shift the balance of inconvenience on to plaintiff. In fact, this Court finds it difficult to understand why, in light of Dartco's offer of a stipulation not to raise Davis' original lack of compliance with the bond statute, Davis is arguing to have this case remain in Delaware. We can find no obvious benefits to Davis to keep the case in Delaware, especially in view of the overwhelmingly superior convenience offered by the Georgia forum.

## C. Interest Of Justice.

■ The contract between Davis and Dartco contains a choice of law provision which expressly states that the contract

---

3. The inconvenience of a Delaware trial to defendant and witnesses becomes even more acute in light of the parties expectation that the trial will last for at least two months.

shall be governed by Georgia law. "Generally speaking, it is preferable for a court of the state whose substantive law controls the action to hear the case, and this is a factor to be considered on a motion to transfer." *Sports Eye*, 565 F.Supp. at 639. That fact that Georgia law governs the contract is not, however, a decisive factor which requires transfer. *Lee v. Ohio Casualty Ins. Co.*, 445 F.Supp. 189, 195 (D.Del. 1978).

Another factor to be considered is the "amenability of witnesses to compulsory process." *Sports Eye*, 565 F.Supp. at 640. The vast majority, if not all of the party and non-party witnesses live or work in either Georgia or South Carolina. Those who are located in Georgia, even if in another district, and those who are located outside of Georgia but within 100 miles of the courthouse, are subject to the subpoena power of the United States District Court for the Southern District of Georgia, Augusta Division.

Rule 45(e) of the Federal Rules of Civil Procedure provides in relevant part:

A subpoena requiring the attendance of a witness at trial may be served at any place within the district, or at any place without the district that is within 100 miles of the place of the hearing or trial specified in the subpoena, or at a place within the state where a state statute or rule of court permits service of a subpoena issued by a state court of general jurisdiction sitting in the place where the district court is held.

The state courts of general jurisdiction sitting in Georgia permit the service of a subpoena for trial anywhere in the state. O.C.G.A. § 24–10–21.[4] Therefore, all of the potential witnesses who are located in Georgia, including the project architect, Lockwood Greene, and all of the Dartco employees who worked on the project, may be subpoenaed if the case is transferred and tried in Georgia. On the other hand, none of them may be subpoenaed by this Court sitting in the District of Delaware.

Greenville, South Carolina, the location of Davis' offices, is approximately 100 miles from the courthouse in Augusta, Georgia. The Davis employees who were involved in the project and work or live in Greenville may or may not be subject to subpoena pursuant to the 100 mile rule. Apparently, portions of Greenville are within 100 miles of the courthouse and portions are not. As of the time of oral argument, it had not been clearly established how much of Greenville was within the 100 miles and whether this included the area in which the Davis offices were located. However, even if the Davis offices were outside this area, at least some of the Davis employees who were involved in the project live in the area of Greenville which is within 100 miles. Therefore, they too would be subject to compulsory process by the court in Georgia but not by a court in this district.

Since the interest of justice and the relative convenience to the parties and witnesses tips the scales heavily towards transfer, we will grant defendant's motion to have this action transferred to the Southern District of Georgia, Augusta Division.

An appropriate order will follow.

---

4. Section 24–10–21 provides in part:
 A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the state.